# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

     Plaintiffs,

     v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

     Defendants.

Civil No. 3:. 04 CV 141

---

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332 and 1441, Defendant Bacardi USA, Inc. ("Bacardi

USA")[1], by and through its undersigned counsel, Hunton & Williams LLP, gives notice of the

removal of this action from the Superior Court Division of the General Court of Justice,

Mecklenburg County, North Carolina, to the United States District Court, Western District of

North Carolina, Charlotte Division. The grounds for removal are as follows:

---

[1] The proper name of Bacardi USA should be "Bacardi U.S.A., Inc."

1.    On January 13, 2004, a civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly situated v. Zima Company, et al.*, was filed in North Carolina Superior Court, Mecklenburg County, designated Civil Action No. 04-CVS-626 (*see* Complaint, Exhibit A hereto).

2.    Plaintiffs seek damages, disgorgement of certain revenues and injunctive relief under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*, and the North Carolina common law of unjust enrichment and negligence. Plaintiffs bring this suit individually and on behalf of two purported classes. (*See* Complaint, ¶¶ 38 (A) and (B)).

3.    This Notice of Removal is filed subject to and with full reservation of rights by Bacardi USA, including but not limited to defenses and objections to venue, improper service of process, and personal jurisdiction. No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, motions, and pleas are expressly reserved.

4.    Upon diligent inquiry by Bacardi USA, no Defendant has been served in this action. Accordingly, in accordance with the provisions of 28 U.S.C. § 1446(b), this Notice of Removal is timely filed.

5.    All Defendants who are actual entities have consented to this removal. (*See* Consents to Removal, Exhibit B hereto.)

6.    The Western District of North Carolina, Charlotte Division, is the United States District Court and division thereof embracing the place where Plaintiffs' state court action is pending. Therefore, Plaintiffs' state court action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

2

7. Pursuant to 28 U.S.C. § 1446(d), all adverse parties are being provided with written notice of removal, and a copy of this Notice of Removal is being filed with the Clerk of the Superior Court Division for Mecklenburg County, North Carolina.

8. The Summons and Complaint and the Notice of Filing Notice of Removal constitute all process and pleadings in the state court action. The Summons and Complaint are attached as Exhibit A. The Notice of Filing Notice of Removal is attached as Exhibit C.[2]

## DIVERSITY JURISDICTION

9. This Court has original diversity jurisdiction over this action under 28 U.S.C. § 1332 because: (1) there is complete diversity of citizenship between the Plaintiffs and all Defendants, and (2) on the face of the Complaint, it is clear that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

10. This Court has diversity jurisdiction over this matter because the citizenship of the Plaintiffs and Defendants are entirely diverse. *See* 28 U.S.C. § 1332.

11. Plaintiffs allege that they are citizens of North Carolina (Complaint, ¶ 28.) For the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332(c)(1), a corporation is deemed to be a citizen of its state of incorporation and of the state where it has its principal place of business. All of the defendants are citizens of foreign countries or states other than North Carolina:

    a. Adolph Coors Company is incorporated in the State of Delaware and has its principal place of business in the State of Colorado.

---

[2] To prevent duplication, Bacardi USA has not attached a second copy of this pleading to Exhibit C, but hereby incorporates it therein by reference.

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 3 of 110

b.      Coors Brewing Company is incorporated in the State of Colorado and has its principal place of business in Colorado.

c.      Zima Brewing Company is not a corporation or other business entity, but is instead a trade name used by Coors Brewing Company and as such has no "citizenship" apart from Coors Brewing Company (*see* subparagraph 11(b), *supra*).

d.      There is no corporate or other business entity by the name of Mike's Hard Lemonade Company.  It is instead a trade name used by one or more of the firms referenced in sub-paragraphs (e) to (g) and as such has no separate citizenship.

e.      There is no corporate or other business entity by the name of Mark Anthony Group.

f.      There is no corporate or other business entity by the name of Mark Anthony International.  Mark Anthony International SRL is incorporated in and has its principal place of business in Barbados.

g.      Mark Anthony Brands Ltd. is incorporated in and has its principal place of business in Canada.

h.      Bacardi U.S.A., Inc. is incorporated in the State of Delaware and has its principal place of business in the State of Florida.

i.      Bacardi Limited is incorporated in Bermuda and has its principal place of business in Bermuda.

j.      Bacardi & Company Limited is incorporated in Liechtenstein and has its principal place of business in the Bahamas.

k.      There is no corporate or other business entity by the name of Bacardi Group.  To the extent that the Complaint's reference to "Bacardi Group" is meant to refer

4

to the other named Bacardi defendants, none of these defendants is a citizen of North Carolina (*see* subparagraphs 11(h)-(j), *supra*).

l.    Kobrand Corporation is incorporated in the State of New York and has its principal place of business in the State of New York.

m.    The Beer Institute is a nonprofit corporation organized under the laws of the District of Columbia and has its principal place of business in the District of Columbia.

n.    Heineken, N.V. is a company organized under the law of the Netherlands and has its principal place of business in the Netherlands.

o.    Heineken USA, Inc. is incorporated in the State of New York and has its principal place of business in the State of New York.

p.    Brown-Forman Corporation is incorporated in the State of Delaware and has its principal place of business in the Commonwealth of Kentucky.

q.    Brown-Forman Beverages Worldwide is an unincorporated operating division of Brown-Forman Corporation and, as such, has citizenship identical with Brown Forman Corporation, which is incorporated in the State of Delaware and has its principal place of business in the Commonwealth of Kentucky. (*See* subparagraph 11(p), *supra*).

r.    Diageo Plc is a company incorporated under the laws of England and Wales with its principal place of business in London, England.

s.    Diageo North America is incorporated in the State of Connecticut and has its principal place of business in the State of Connecticut.

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 5 of 110

t.    Paddington, Ltd. is not a corporation or other business entity, but one of the names under which Diageo North America does business, and as such has no "citizenship" separate from Diageo North America (*see* sub-paragraph 11(s), *supra*).

## AMOUNT IN CONTROVERSY

12.    So long as one named Plaintiff puts in controversy claims valued at over $75,000, he or she satisfies the diversity statute, 28 U.S.C. § 1332(a), and this Court has supplemental jurisdiction over the proposed class under 28 U.S.C. § 1367. *See Rosmer v. Pfizer*, 263 F.3d 110, 114-15 (4th Cir. 2001). A complaint's allegations concerning the amount in controversy generally are taken to be true, *see McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957), but a removing defendant may supplement those allegations. *See Dash v. Firstplus Home Loan Owner Trust 1996-2*, 248 F. Supp. 2d 489, 499 (M.D.N.C. 2003) (refusing to remand even where plaintiffs insisted their claims were worth less than $75,000). The removing party bears the burden of demonstrating that the amount in controversy is satisfied. *See id.* at 496-97. The prevalent standard used by the district courts in the Fourth Circuit to analyze this burden is the preponderance of the evidence standard. *See id.* at 497.

13.    In a purported class action, the determination of the amount in controversy is generally based upon each plaintiff's claims and not upon the aggregate. *See Glover v. Johns-Manville Corp.*, 662 F.2d 225, 231 (4th Cir. 1981) (citing *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 293-96, 94 S. Ct. 505, 507-09 (1973)). The exception to this general rule is that "when several plaintiffs unite to enforce a single title or right, in which they have a *common and undivided interest*, it is enough if their interests collectively equal the jurisdictional amount." *Zahn*, 414 U.S. at 294, 94 S. Ct. at 508 (emphasis supplied); *see also Snyder v. Harris*, 394 U.S. 332, 336, 89 S. Ct. 1053, 1057 (1969).

6

14.     Here, the allegations of the Complaint demonstrate that, regardless of the analysis used, the relief sought in this action is well in excess of the $75,000 threshold for diversity jurisdiction.

## A.    The Value of Actual Damages, Treble or Punitive Damages, and Attorneys' Fees Sought by Each Named Plaintiff Exceeds the Jurisdictional Amount

15.     In Prayer for Relief No. 5, Plaintiffs seek "all actual damages sustained by the plaintiff classes plus treble damages, punitive damages, and attorneys' fees, costs of suit and interest." All of these requested elements of recovery are relevant to establishing the amount in controversy. *See, e.g., Hutchens v. Progressive Paloverde Ins. Co., et al.*, 211 F. Supp. 2d 788, 790-91 (S.D. W. Va. 2002) (punitive damages); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (statutory attorney fees); *accord Dash*, 248 F. Supp. 2d at 499 (discussing actual damages, treble damages and attorney fees).

16.     Plaintiffs seek to cap these damages at $75,000, one penny less than the jurisdictional amount. (*See* Complaint, ¶ 26 ("Plaintiff and class members individually claim damages, including punitive, treble, or statutory damages, of less than $75,000 . . ..").) Defendants dispute Plaintiffs' ability to avoid federal jurisdiction in this manner, particularly because under North Carolina state procedure Plaintiffs may not be bound to their assertion as the case proceeds. *See* N.C. R. Civ. P. 54(c); *Dash*, 248 F. Supp. 2d at 498-99 (holding that despite plaintiffs' attempt to cap their compensatory damages at less than the jurisdictional amount, the court may look at entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue); *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 484-85 (S.D. W. Va. 2001) (explaining that "[m]any state court systems . . . have interpreted their civil rules amendments in a way that encourages an adroit plaintiff to deny a diverse defendant access to the federal forum and yet, later, expose that defendant to a damage award that would have supported exercise of federal jurisdiction.").

17.     In addition, while Plaintiffs purport to limit their own "punitive, treble, or statutory damages," they have not limited the value of their request for injunctive relief (Complaint, Prayer for Relief No. 4) or their multi-billion dollar demand for disgorgement (*id.*, Prayer for Relief No. 3). Even if Plaintiffs' self-imposed cap below the jurisdictional amount for certain types of relief is sufficient to avoid federal jurisdiction (which Defendants dispute), as addressed below, the value of the injunctive relief sought or the disgorgement demand is more than sufficient to meet the amount in controversy requirement. This is true whether these claims are analyzed as individual claims for relief by each named Plaintiff or as claims by the purported class seeking a "common and undivided interest."

**B.     The Value of the Injunctive Relief Sought Exceeds the Jurisdictional Amount**

18.     Prayer for Relief No. 4 seeks an injunction to "[e]njoin defendants from engaging in any marketing of alcoholic beverages to underage persons." Defendants deny that this is a fair or accurate way to describe their advertising practices. Nevertheless, Plaintiffs, at a minimum, appear to attack nearly every aspect of Defendants' "extensive" and "well-financed" advertising efforts (*id.*, ¶¶ 4, 7, and 8), including Defendants' numerous logos (¶ 49), "themes, methods, and characters" (¶¶ 41, 47-49), websites (¶ 54), merchandise (¶ 56), choice of actors and models (¶ 57), and research techniques (¶ 51). (*See generally* Complaint, ¶¶ 7, 8, 19, 41, 47-59.) Plaintiffs demand substantial and expensive changes to Defendants' radio, print, Internet, live-event, and television marketing. (*Id.*, ¶ 60.) In short, Plaintiffs seek fundamental changes in the advertising practices of each Defendant. Defendants deny that Plaintiffs' claims have any merit or that Plaintiffs are entitled to any injunctive relief, but the question for jurisdictional purposes is what amount Plaintiffs have put in controversy. *See McDonald,* 240 F.2d at 425.

19.     Plaintiffs allege that "Defendants are among the biggest-spending" marketers in the world, with "hundreds of millions" of advertising messages. (Complaint, ¶ 3.) Plaintiffs

seek wholesale changes to all aspects of Defendants' extensive marketing programs. (*Id.*, Prayer for Relief No. 4.) An injunction with such sweeping effects obviously would impose huge costs and losses on the Defendants. Although Defendants vehemently dispute that their current marketing campaigns are improper, compliance with an injunction of the magnitude demanded would require significant investment in redesigning Defendants' current and future radio, television, print, Internet, merchandise and other promotional campaigns at a nationwide level. The monetary effects of the injunction Plaintiffs envision would easily exceed $75,000 -- and, probably, multiples of $75,000 -- *for each Defendant*.

20.     Because the Fourth Circuit measures the value of an injunction using the "either viewpoint" rule, this potential enormous cost to the Defendants is an appropriate measure of the value of the injunction for purposes of assessing the amount in controversy. *See, e.g., McCoy*, 147 F. Supp. 2d at 492 (analyzing Fourth Circuit precedent and applying the "either viewpoint" rule); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 717-19 (D. Md 2001) (same).

21.     Further, because the injunction would alter Defendants' general advertising and marketing practices, rather than how they deal with particular Plaintiffs, the value of the injunction is not allocated among the Plaintiffs. *See, e.g., In re Microsoft Corp.*, 127 F. Supp. 2d at 715-19 (collecting authority) (if injunction's cost would be the same if granted to one plaintiff as to many, it is not apportioned).

## C.     The Value of the Disgorgement Sought Exceeds the Jurisdictional Amount

22.     Prayer for Relief 3 seeks "disgorg[ment]" of "*all amounts* by which [defendants] have been unjustly enriched." (emphasis supplied). The Complaint alleges that the unjust enrichment is between $1 billion (Complaint, ¶ 75) to $22.5 billion per year (Complaint, ¶ 7), and seeks to compel disgorgement for the past 22 years, back to 1982 (Complaint, ¶ 38). Thus,

Plaintiffs seek disgorgement of between $22 billion and $495 billion in alleged profits from Defendants.

23. Disgorgement of alleged unjust enrichment is a different remedy than, and is in addition to, the "actual damages … treble damages, [and] punitive damages" Plaintiffs seek in Prayer For Relief No. 5. *See Cole v. Wagner,* 197 N.C. 692, 150 S.E. 339, 341 (1929) ("The purpose of such an action is not to recover damages, but to make the party disgorge …" the party's unjust enrichment); *Medical Mut. Ins. Co. v. Mauldin,* 157 N.C. App. 136, 139, 577 S.E.2d 680, 682 (2003) ("equitable remedies which require the payment of money do not constitute compensatory damages").

24. Each named Plaintiff requests the entire undivided $22 billion to $495 billion in disgorgement, regardless of whether a class is certified. *See In re Microsoft Corp.,* 127 F. Supp. at 719 (disgorgement claim is indivisible and not apportioned); *In re Cardizem CD Antitrust Litig.,* 90 F. Supp. 2d 819, 828 (E.D. Mich. 1999) (applying North Carolina law and holding that the disgorgement claim was an integrated claim that satisfied the amount in controversy requirement). Defendants explicitly deny Plaintiffs' factual or legal right to recover such amounts either individually or as a class. In fact, named Plaintiffs seek this full disgorgement, even though there is no claim that any Plaintiff's money ever enriched any Defendant. Nevertheless, the billions of dollars Plaintiffs seek on the face of their Complaint is many thousands of times greater than the amount required to establish the necessary amount in controversy as to each Plaintiff.

## D.    The Combined Relief Sought Clearly Establishes Jurisdiction

25.    The various remedies Plaintiffs seek must be valued in combination, rather than in isolation.[3] Thus, where a complaint alleges that each plaintiff and class member seeks "total damages of $75,000 or less," but also seeks "equitable relief" that has some value, the amount in controversy is satisfied and the complaint is removable. *See, e.g., Holcombe v. Smithkline Beecham Corp.,* 272 F. Supp. 2d 792, 799 (E.D. Wis. 2003) ("the combined value of the damages and the equitable relief ... exceeds $75,000"); *Hoffman v. Vulcan Materials Co.,* 19 F. Supp. 2d 475, 482-83 (M.D.N.C. 1998) (since "plaintiffs have each requested in excess of $30,000 in damages," if the "injunction is worth more than $45,000" removal is proper). The precise total is not important so long as it is "apparent that the claims are likely above" $75,000. *See Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335-36 (5th Cir. 1995) (a preponderance is sufficient); *Dash,* 248 F. Supp. 2d at 497 (holding same and collecting cases).

26.    In sum, given the billions of dollars Plaintiffs seek to disgorge, the enormous costs to comply with an injunction, and Plaintiffs' claims for up to $75,000 in treble damages, punitive damages, and attorneys' fees -- the Complaint on its face demonstrates that the amount in controversy exceeds $75,000.

**WHEREFORE,** Defendant Bacardi U.S.A., Inc., prays for removal of this above-entitled and numbered cause from the North Carolina Superior Court to this Honorable Court and Plaintiff is hereby notified to proceed no further in state court.

---

[3] The Fourth Circuit has long held that the value of an injunction is to be added to the value of a plaintiff's monetary claims to determine the amount in controversy. *See Miller v. Southern Bell Tel. & Tel. Co.,* 279 F. 806, 810 (4th Cir. 1922) (ruling that because plaintiff "might [ ] have recovered ... the full amount [$2,999] of damages sued for, and also obtained a permanent injunction against the increased rates, [this] necessarily implies that more than [jurisdictional amount] is involved" and removal was proper); *Chesapeake & Del. Canal Co., v. Gring,* 159 F. 662, 664-66 (4th Cir. 1908) (past losses and the value of requested injunction combine to satisfy amount in controversy).

This **29ᵀʰ** day of March, 2004.

Respectfully submitted,

BACARDI U.S.A., INC.

By: _____

T. Thomas Cottingham III (N.C. Bar No. 16439)
Wood W. Lay (N.C. Bar No. 25126)
Hunton & Williams LLP
Bank of America Plaza
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700
(704) 378-4890 ~ Fax

Marty Steinberg
Jeffrey W. Gutchess
Hunton & Williams LLP
Barclays Financial Center, Suite 2500
111 Brickell Avenue
Miami, FL 33131
(305) 810-2500
(305) 810-2460 ~ Fax

Gregory G. Little
Stephen R. Blacklocks
Hunton & Williams LLP
200 Park Avenue, 43rd Floor
New York, NY 10166-0136
(212) 309-1000
(212) 309-1100 ~ Fax

Dan K. Webb
Jeffrey M. Wagner
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-7488
(312) 558-5700 ~ Fax

12

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on the following counsel of record as indicated below:

David Boies, III
Timothy D. Battin
Ian Otto
Christopher H. Skinner
Straus & Boies, LLP
10513 Braddock Road
Fairfax, VA 22032

VIA FIRST CLASS U.S. MAIL

Michael Strauss
Mark Schirmer
Straus & Boies, LLP
1130 22nd Street South
Birmingham, AL 35205

VIA FIRST CLASS U.S. MAIL

Jeffrey A. Bartos
Guerrieri, Edmond & Claymon, P.C.
1625 Massachusetts Ave., N.W.
Suite 700
Washington, DC 20036-2243

VIA FIRST CLASS U.S. MAIL

James F. Wyatt, III
435 East Morehead Street
Charlotte, NC 28202-2609

VIA HAND-DELIVERY

Anne G. Kimball
Sarah L. Olson
Wildman Harrold Allen & Dixon, LLP
225 West Wacker Drive
Chicago, IL 60606-1229

VIA FIRST CLASS U.S. MAIL

Thomas D. Myrick
Curtis J. Shipley
Moore & Van Allen PLLC
10 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003

VIA FIRST CLASS U.S. MAIL

Thomas W. Kirby
Brian Nuterangelo
Wiley Rein & Fielding, LLP
1776 K Street, N.W.
Washington, DC 20006-2304

<u>VIA FIRST CLASS U.S. MAIL</u>

Mark W. Merritt
Robinson Bradshaw & Hinson, P.A.
101 N. Tryon Street
Suite 1900
Charlotte, NC 28246

<u>VIA FIRST CLASS U.S. MAIL</u>

David W. Ichel
Bryce Friedman
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

<u>VIA FIRST CLASS U.S. MAIL</u>

Jonathan E. Buchan
Helms Mulliss & Wicker, PLLC
201 N. Tryon Street
Charlotte, NC 28202

<u>VIA FIRST CLASS U.S. MAIL</u>

Jerome G. Snider
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

<u>VIA FIRST CLASS U.S. MAIL</u>

Cory Hohnbaum
Kennedy Covington
Hearst Tower, 47th Floor
214 N. Tryon Street
Charlotte, NC 28202

<u>VIA FIRST CLASS U.S. MAIL</u>

Phillip L. Graham, Jr.
William J. Snipes
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

<u>VIA FIRST CLASS U.S. MAIL</u>

Pressly M. Millen
Womble Carlyle Sandridge & Rice PLLC
Post Office Box 831
Raleigh, NC 27602

<u>VIA FIRST CLASS U.S. MAIL</u>

2

William C. Heck  
Mark E. McGrath  
Kelley Drye & Warren LLP  
101 Park Avenue  
New York, NY 10178

<u>VIA FIRST CLASS U.S. MAIL</u>

Mark Vasco  
Nelson Mullins Riley & Scarborough, L.L.P.  
Bank of America Corporate Center  
Suite 2400  
100 North Tryon Street  
Charlotte, NC 28202-4000

<u>VIA FIRST CLASS U.S. MAIL</u>

Peter L. Winik  
Latham & Watkins LLP  
555 Eleventh Street, NW  
Suite 1000  
Washington, DC 20004

<u>VIA FIRST CLASS U.S. MAIL</u>

This 29th day of March, 2004.

Wood W. Lay

3

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04 CVS 626

---

|  |  |
|---|---|
| Ronald P. Wilson, Andrea B. Wilson and Joseph A. Wilson, on behalf of themselves, all others similarly situated, | : |
| Plaintiffs, | : |
| v. | : |
| ZIMA COMPANY, MIKE'S HARD LEMONADE COMPANY, BACARDI USA, INC., ADOLPH COORS COMPANY, COORS BREWING CO., MARK ANTHONY GROUP, MARK ANTHONY INTERNATIONAL, MARK ANTHONY BRANDS, LTD., BACARDI LIMITED, BACARDI & COMPANY LIMITED, BACARDI GROUP, KOBRAND CORPORATION, HEINEKEN, N.V., HEINEKEN USA, INC., THE BEER INSTITUTE, INC., BROWN -FORMAN CORPORATION, BROWN- FORMAN BEVERAGES WORLDWIDE, DIAGEO PLC, DIAGEO NORTH AMERICA, INC., and PADDINGTON, LTD. | : |
| Defendants. | : |

Civil Action No. ___



---

## COMPLAINT

Plaintiffs Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, by and through

their undersigned attorneys, set forth and allege the following unfair and deceptive trade

practices committed by the Defendants.

## NATURE OF THIS CASE

1.     This case arises from a long-running, sophisticated, and deceptive scheme by certain alcoholic beverage manufacturers to market alcoholic beverages to children and other underage consumers. The primary purpose and effect of this ongoing scheme is to generate billions of dollars per year in unlawful revenue derived from sales of alcoholic beverages consumed by children and other underage consumers. This lawsuit seeks to disgorge the unlawful profits these companies have made through the illegal sale and use of their products and to stop the abusive marketing practices that contributed to those illegal sales.

2.     This case is not a broad brush attack on the alcohol industry or on the marketing of alcoholic beverages in general. Alcoholic beverage manufacturers produce a legal product that is responsibly and legally enjoyed by millions of Americans. Many alcoholic beverage companies are good corporate citizens who fairly, legally, and responsibly market their products to the public, taking appropriate care not to induce or encourage the illegal and dangerous use of their products.

3.     Plaintiffs also do not allege that all alcoholic beverages manufactured by even these Defendants are inappropriately marketed to underage consumers. Defendants are among the biggest-spending and most sophisticated marketers in the world economy and they know exactly how to target and reach whatever demographic market segment they choose. Defendants can, and do, market certain alcoholic beverages (such as champagne, red wine and premium scotch) in a reasonable and narrow adult-oriented way to an essentially adults-

-2-

only audience. The scope of this lawsuit is limited to Defendants' deliberate, reckless, and illegal targeting of underage consumers.

4.     Nor do Plaintiffs complain about the incidental exposure of children to alcoholic beverage advertising that is properly and reasonably directed to adults. It is impossible to completely shield our Nation's young people from such a pervasive phenomena as alcohol advertisements; even legal and responsible advertisements directed only at adults will inevitably be seen by children on occasion. Defendants, however, cannot use this spillover effect as a red herring to camouflage and excuse their deliberate efforts to market alcoholic beverages designed to appeal to underage consumers directly to such underage consumers. This lawsuit seeks redress only for the deliberate and reckless targeting of underage consumers, not for the incidental or accidental exposure of children to alcoholic beverage advertising.

5.     Alcohol use by children and other underage consumers has reached epidemic proportions in the United States and throughout the world. Children are beginning to drink alcohol at a younger age than ever before and heavy binge drinking is at an all time high. This staggering epidemic results in hundreds of thousands of deaths, injuries and illnesses of children and other underage consumers, as well as thousands of deaths and injuries to innocent members of the public at large. Indeed, alcohol use among underage drinkers is the single most significant factor in each of the top three causes of death among young people aged 17-21. Defendants' conduct greatly exacerbates this underage drinking epidemic and

directly contributes to numerous human tragedies caused by illegal underage drinking.

6.     In addition to the human suffering inflicted on society, Defendants' conduct has caused, and continues to cause, enormous economic injuries to Plaintiffs and the classes they seek to represent. Parents and guardians in the State of North Carolina and throughout the country are victimized as billions of dollars in family assets are transferred to Defendants as part of the far-reaching illegal trade in alcoholic beverages. And underage drinkers themselves, cynically manipulated by sophisticated and well-financed advertising and marketing efforts directed at them, provide Defendants with billions of dollars in ill-gotten profits.

7.     Defendants' marketing efforts directed at underage drinkers generate a substantial portion of their revenues and profits and are crucial to their overall corporate strategy. At least 15-20% of all alcoholic beverages sold in the United States is consumed by underage drinkers, resulting in billions of dollars per year in illegal profits for Defendants. The Journal of the American Medical Association recently reported that "conservatively, underage drinkers drank 19.7% of the alcohol consumed in the United States in 1999, accounting for $22.5 billion." That amounts to approximately 1 billion alcoholic drinks consumed by underage drinkers every month. Teenagers – who by definition cannot legally drink any form of alcohol in any state in the country – consume approximately 10 billion bottles of beer alone per year.

8.     Far from passively receiving an unintended windfall from this illegal and

-4-

deadly trade to underage drinkers, Defendants instead engage in active, deliberate, and concerted efforts to maximize their profits by attempting to establish brand loyalty among underage consumers and encouraging them to buy their products. Due to the growing awareness of the tragic consequences of underage drinking and the resulting scrutiny of their marketing practices, Defendants have engaged in a highly sophisticated, unfair, and deceptive scheme designed to conceal and disguise their efforts to capture the minds, hearts, and wallets of underage consumers. In pursuit of this scheme, Defendants have engaged in numerous unfair and deceptive acts and practices, including representations that their products have characteristics, uses, benefits, and approvals for underage consumers that they do not have. These unfair and deceptive acts and practices, include: (a) extensive advertising in youth-oriented media; (b) the use of advertising themes that appeal to underage drinkers; (c) web sites designed to generate visits by underage consumers with illusory age restrictions that are readily accessible by minors; (d) extensive market and behavioral research regarding underage consumers; (e) the use of cartoon and other promotional characters designed to appeal to underage consumers; (f) repeated and highly publicized denials that their advertising and marketing efforts are directed at underage drinkers when they were fully aware that those denials are false; (g) "public service" advertisements purportedly discouraging underage drinking but which in truth are designed to have, and in fact do have, precisely the opposite effect; (h) sponsoring promotional events on school campuses and at spring break venues where a large portion of the audience is under the age of 21; (i) the sale

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 20 of 110

and distribution of apparel, toys, and promotional items designed to appeal to underage consumers; (j) the widespread use of advertising themes encouraging rule breaking, juvenile, and risky behavior; (k) the use of code-words to conceal and disguise research and marketing efforts directed at children and underage drinkers; (l) conducting secret market research into the drinking habits of underage drinkers; (m) the use of secretive and unconventional marketing and research methods; (n) advertising their products in media that disproportionately are watched and read by underage consumers; (o) public denials that their marketing efforts increase the quantity of marketed products that are sold and consumed by underage consumers; (p) making knowingly false statements that alcoholic beverage advertising does not increase the likelihood that underage consumers will commence drinking or increase the quantity that they drink; (q) the deliberate use of actors and spokespersons whom underage consumers perceive as below the legal drinking age; and (r) advertising in media where teenagers are more likely to view alcohol advertisements than adults over the age of 21.

9.     The fundamental objectives of these marketing efforts include: (a) breaking down underage consumers' resistance to, and natural apprehension about, illegally consuming alcohol; (b) obtaining a competitive advantage over other alcohol manufacturers by aggressively establishing brand loyalty for their products at as early an age as possible, often while children are still in their early teens; (c) establishing in the minds of teenagers the impression that the use of their products is associated with sexual prowess, physical

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 21 of 110

attractiveness, heightened confidence, and immunity from the consequences of rule breaking and risky behavior.

10.  In its "Bacardi By Night" advertising campaign, Defendant Bacardi places advertisements in Stuff, FHM, and Spin magazines (all of which are disproportionately read by males under the age of 21) featuring themes that are highly appealing to underage consumers, including references to video games ("made for extended play"). The Bacardi By Night campaign also features wild, raucous, irresponsible, and immature behavior by models chosen to appeal to underage consumers. In one ad, a scantily clad young woman is standing on a barstool pouring a shot of rum down the front of her chest while a young man licks the rum off of her exposed midriff; the tag line reads: "Vegetarian By Day. Bacardi By Night."

11.  Defendant Bacardi also operates internet web sites designed to appeal to underage consumers. For example, the Bacardi.com website: (a) offers a selection of arcade games designed to appeal to underage consumers ("Welcome to the online arcade"), including a drinking game called "virtual quarters" where cartoons of young people bounce quarters into a glass while experiencing increasingly blurry vision until they pass out; (b) features cartoon icons of characters that are intentionally designed to appeal to underage consumers and are perceived by underage consumers to be under the age of 21; (c) has no "age gatekeeper" and does not take reasonable steps to limit underage consumers from using the site; (d) advertises alcoholic beverages using themes and language directed at underage

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 22 of 110

consumers such as "the soul of the Bacardi brand – youthful, high quality, sociable, sensual, and passionate" and "the ultimate party rum" that "lives on the wild side" and "especially suitable for nighttime consumption in bars and clubs by those who enjoy partying until the early hours"; (e) promotes contests designed to appeal to underage consumers; and (f) features rave music and other entertainment designed to appeal to underage consumers.

12.    Defendant Bacardi also markets its products to underage consumers on other companies' web sites. For example, Bacardi counsels visitors to one web site on how to "avoid any dirty looks from mom as you reach for the Bacardi bottle at 8am." This advertisement provides a recipe for a "breakfast with a bang" consisting of rum, grapefruit, and sugar that is particularly well suited for those times when "your mom still persistently nags you about having fruit with breakfast." In another internet advertisement, Bacardi advises students: "Next time you have a history project to do, brew up a batch of this historical cocktail. It might not get you an 'A' (actually it might land you in a lot of hot water), but I bet you'll never have a more interesting history class!" Another Bacardi-sponsored internet recipe (the "Screaming White Orgasm") invites students to enjoy a "spring fling with Bacardi" on a "Campus Tour," complete with "a night of Bacchnalian delights with Bacardi and the Tour players." Another advertisement by Bacardi provides "TV/Movie-centered drinking games" that "will surely get you wrecked" which are, of course, "best if used with Bacardi White Rum." One such drinking game is based on the teen coming-of-age movie *Ferris Bueller's Day Off*: "Whenever someone in the movie says the words 'Ferris'

-8-

or 'Bueller' you must take one drink." Another drinking game that is "quickly making its way through college campuses" requires "taking a swig every time" the host of a show says certain words. One drinking game promoted by Bacardi is so shockingly irresponsible the rules deserve to be quoted in full: "Drink every time any person in the movie either says a drug's name or does drugs. Watch out for the beginning . . . 'We had 2 bags of grass, 75 pellets of mescaline, 5 sheets of high powered blotter acid . . .' Just keep drinking."

13. Advertisements for Defendant Kobrand's Alize brand cognac-based beverage are likewise designed to appeal to underage consumers and appear in magazines such as Complex magazine which is disproportionately read by males under the age of 21. Kobrand also utilizes internet pop-up ads for Alize that are directed at underage consumers such as invitations to "join their online street team" and "get dope freebies and even a chance to cozy with VIPS at parties across the country."

14. Defendant Brown-Forman tells readers of Glamour magazine (which is disproportionately read by women and girls under the age of 21) that its sweet wine Fontana Candida is "fresh," "bright," and "great with today's catch." The model in this ad is a young looking female with teenage style bangle bracelets surrounded by a fishing net.

15. Defendant Diageo in its "The Captain was here" advertising campaign for Captain Morgan Spiced Rum tells readers of Maxim and Stuff magazines (which are disproportionately read by males under the age of 21) to "Take your pants off and stay a while." This ad features six young snowboarders drinking rum drinks. In addition, Diageo's

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 24 of 110

Captain Morgan Rum website features cartoon characters, young women named the Morganettes, and video games. The website also promotes drinking during summer vacation (when schools are out), proclaiming that "Summer isn't over until the Captain says it is."

16.   Defendant Coors also markets its products to underage consumers through joint marketing efforts with motion picture companies, including in connection with movies whose primary intended audience is underage consumers. For example, Coors places television advertisements telling viewers to "look for the Coors Light Twins in the upcoming Scary Movie 3," a motion picture that is heavily marketed to underage consumers and whose intended audience is primarily underage consumers.

17.   Defendant Heineken in an advertisement for its Heineken brand beer shows two bottles of Heineken beer duct taped to a Nintendo video game controller. The tag line for the ad reads "It's game day" and "Add two more features to your controller." In another advertisement for its Amstel Light brand of beer, Defendant Heineken advertises a Mardi Gras sweepstakes in Stuff magazine (which is disproportionately read by males under the age of 21). The tag line reads "Mardi Gras and a mansion ON US. Wild women ON YOU." These advertisements are purposely designed to appeal to underage consumers and are placed in publications that have a disproportionately high level of underage readers.

18.   As the World Health Organization has noted, the "large alcohol manufacturers are trying to establish a habit of drinking alcohol at a very young age" and "our youth are a key target of the marketing practices of the alcohol industry." In a stunning admission in an

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 25 of 110

interview with a trade publication, a senior executive of a major beer manufacturer has admitted that his company's marketing efforts are focused on "making sure that we capture the mind, heart, and stomach of every new generation of beer drinkers." As Defendants well know, and with devastating effect have put into practice, "capturing the mind" and heart of a new generation requires reaching that generation before they become adults.

19.     The core of Plaintiffs' case against these Defendants arises out of the following wholly indisputable facts. First, it is illegal and harmful for underage consumers to purchase and consume Defendants' alcoholic beverage products. Second, Defendants receive at least a billion dollars per year as a result of the illegal and harmful trade in alcoholic beverages to underage consumers. Third, at least 10 million underage consumers are exposed to Defendants' marketing efforts every day and Defendants know this to be true. Fourth, Defendants know and intend that their marketing efforts appeal to underage consumers (particularly older teenagers). Fifth, Defendants' marketing efforts are designed to establish a brand preference for their products and to promote positive feelings about both the consumption of alcohol in general and the consumption of Defendants' products in particular. Sixth, Defendants' revenues and profits increase in direct proportion to the number of teenagers who have a brand preference for their products and who have positive feelings about those products. Seventh, Defendants know that increased advertising expenditures in media with a substantial underage audience will yield increased sales of the product advertised among all demographic groups comprising that audience, including

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 26 of 110

underage consumers. Eighth, Defendants are fully capable of more narrowly focusing their marketing efforts on adults so that substantially fewer underage consumers are exposed to those marketing efforts, but Defendants choose not to do so because they believe their revenues and profits would be negatively affected. Ninth, the hundreds of millions of alcohol advertising messages viewed by underage consumers possess absolutely no redeeming social value other than the enrichment of the Defendants.

20.     These indisputable facts – even without the numerous other factual allegations and legal claims contained in this Complaint – establish a clear *prima facie* showing of wrongful, unjust, and illegal conduct by the Defendants. For example, a company is unjustly enriched, at the very least, when it knowingly and systematically profits from the illegal and harmful trade in dangerous products to children. A company is also negligent, if not reckless and wanton, when it fails to take reasonable steps to avoid inducing or encouraging the illegal and harmful purchase and use of a dangerous product by minors. And a company commits an unfair, deceptive, unconscionable, and unlawful trade practice when it deliberately engages in sophisticated and extensive marketing practices with the purpose and effect of substantially increasing the illegal sales of its dangerous products to children.

## JURISDICTION AND VENUE

21.     Plaintiffs bring this action under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1 et seq. (hereafter "Chapter 75") and under the common law of the State of North Carolina, to obtain equitable relief and to recover damages

and costs of suit for injuries sustained as a result of Defendants' violations of North Carolina law.

22.     Each of the Defendants is found and transacts business in the State of North Carolina and derives substantial revenues from the sale of their products in the State of North Carolina.

23.     Plaintiff Ronald Wilson is a resident of Mecklenburg County, North Carolina and was injured by Defendants' conduct as alleged herein. Plaintiff Andrea Wilson is a resident of Mecklenburg County, North Carolina and was injured by Defendants' conduct as alleged herein. Plaintiff Joseph Wilson is a resident of Mecklenburg County, North Carolina and was injured by Defendants' conduct as alleged herein.

24.     Each of the Defendants has sufficient contacts with the State of North Carolina such that it is fair and reasonable to require them to come here to defend this action, and the exercise of jurisdiction over them comports with North Carolina's long arm statute, N.C. Gen. Stat. § 1-75.4, and the due process clause of the United States Constitution. Venue is proper in Mecklenburg County, North Carolina.

25.     Without limiting the generality of the foregoing, each of the Defendants directly or through authorized agents acting within the scope of their authority has: (a) caused tortious damage by acts or omissions committed in the State of North Carolina; (b) contracted to supply or obtain goods or services in the State of North Carolina; (c) intentionally availed themselves of the benefits of doing business in the State of North Carolina; (d) manufactured,

marketed, promoted, sold, or distributed their products in the State of North Carolina; (e) caused tortious damage in the State of North Carolina by committing acts or omissions outside the State of North Carolina while (i) regularly doing or soliciting business in the State of North Carolina, or (ii) engaging in other persistent courses of conduct in the State of North Carolina, or (iii) deriving substantial revenue from goods used or consumed or services rendered in the State of North Carolina.

26.     Plaintiffs and class members individually claim damages, including punitive, treble or statutory damages, of less than $75,000 and specifically deny any attempt to state a claim under federal law.

27.     The State of North Carolina has a substantial governmental interest in enforcing its consumer protection laws and ensuring that its residents and those that do business in the State of North Carolina comply with those laws, and the Defendants collectively have significant, substantial, and ongoing contacts with the State of North Carolina related to the subject of this lawsuit.

## THE PARTIES

### Plaintiffs

28.     Plaintiffs Ronald Wilson and Andrea Wilson are residents of Mecklenburg County, North Carolina.   Plaintiffs Ronald Wilson and Andrea Wilson are members and proposed representatives of the Guardian Class as defined herein.  Plaintiff Joseph Wilson is their son who consumed alcohol while under the age of 21 without their knowledge or

consent during the class period.

**Defendants**

30.    Defendant Coors Brewing Co., is a corporation headquartered in Golden, Colorado. Defendant Adolph Coors Company is a corporation headquartered in Golden, Colorado. Defendant Zima Company is a subsidiary of Defendant Coors Brewing Co. with its principal place of business in Memphis, Tennessee. Defendants Coors Brewing Co., Adolph Coors Company, and Zima Company are collectively referred to herein as the "Coors Defendants" or "Coors". The Coors Defendants market, sell, and distribute alcoholic beverage products in this judicial district and throughout the United States, including alcoholic beverage products under the following brand names: Coors Light Beer, Zima, and Keystone Light.

31.    Defendant Bacardi Limited is a privately held company with its principal place of business at 65 Pitts Bay Road, Pembroke, Hamilton, Bermuda. Defendant Bacardi USA, Inc. is a corporation with its principal place of business at 2100 Biscayne Boulevard, Miami, Florida. Defendant Bacardi & Company Limited is a privately held company with its principal place of business in the Bahamas. Defendant Bacardi Group is an unincorporated association with its principal place of business in Hamilton, Bermuda. Defendants Bacardi Limited, Bacardi USA, Inc., Bacardi & Company Limited, and Bacardi Group are collectively referred to herein as "Bacardi" or the "Bacardi Defendants". The Bacardi Defendants market, sell, and distribute alcoholic beverage products in this judicial district

-15-

and throughout the United States, including the alcoholic beverage product Bacardi Rum.

32. Defendant Kobrand Corporation ("Kobrand") is a corporation with its headquarters and principal place of business at 134 East 40th Street, New York, New York. Kobrand markets, sells, and distributes alcoholic beverage products in this judicial district and throughout the United States, including the alcoholic beverage product Alize.

33. Defendant The Beer Institute, Inc. ("The Beer Institute") is a District of Columbia nonprofit corporation with its residence and principal place of business at 122 C Street, N.W., Suite 750, Washington, D.C.

34. Defendant Heineken, N.V. is a limited liability entity headquartered in the Netherlands. Defendant Heineken USA, Inc. is a corporation headquartered in White Plains, New York. Defendants Heineken, N.V. and Heineken USA, Inc. are collectively referred to herein as "Heineken" or the "Heineken Defendants". The Heineken Defendants market, sell, and distribute alcoholic beverage products in this judicial district and throughout the United States, including alcoholic beverage products under the following brand names: Heineken Beer and Amstel Light Beer.

35. Defendant Brown-Forman Corporation is a corporation headquartered in Louisville, Kentucky. Defendant Brown-Forman Beverages Worldwide is an unincorporated association headquartered in Louisville, Kentucky. Defendants Brown-Forman Corporation and Brown-Forman Beverages Worldwide are collectively referred to herein as the "Brown-Forman Defendants" or "Brown-Forman". The Brown-Forman Defendants market, sell, and

distribute alcoholic beverage products in this judicial district and throughout the United States, including alcoholic beverage products under the following brand names: Jack Daniels and Fontana Candida Wine.

36.     Defendant Diageo PLC is a limited liability entity headquartered in Great Britain. Defendant Diageo North America, Inc. is a corporation with its principal place of business at 750 East Main Street, Stamford, Connecticut, 06912. Defendant Paddington, Ltd. is a limited liability entity located in Stamford, Connecticut. Defendants Diageo PLC, Diageo North America, Inc., and Paddington, Ltd., are collectively referred to herein as the "Diageo Defendants" or "Diageo." The Diageo Defendants market, sell, and distribute alcoholic beverage products in this judicial district and throughout the United States, including alcoholic beverage products under the following brand names: Smirnoff Ice, Smirnoff Vodka, Jose Cuervo Tequila, Captain Morgan Rum, Jose Cuervo Pre-Mixed Margarita, and Goldschlager Cinnamon Schnapps.

37.     Defendants Mark Anthony Group, Mark Anthony International, and Mark Anthony Brands, Ltd. are privately held companies headquartered in Vancouver, British Columbia, Canada.   Defendant Mike's Hard Lemonade Company is an affiliate of Defendants Mark Anthony Group, Mark Anthony International, and Mark Anthony Brands, Ltd. Defendants Mark Anthony Group, Mark Anthony International, Mark Anthony Brands, Ltd., and Mike's Hard Lemonade Company are collectively referred to herein as the "Mark Anthony Defendants" or "Mark Anthony". The Mark Anthony Defendants market, sell, and

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 32 of 110

distribute alcoholic beverage products in this judicial district and throughout the United States, including the alcoholic beverage products Mike's Hard Lemonade and Mike's Hard Ice Tea.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this case individually on behalf of themselves and, pursuant to N.C. Gen. Stat. § 1A-1, Rule 23, on behalf of the following classes (the "Classes"):

(A) a Guardian Class consisting of all residents of North Carolina who were or are parents or guardians of children whose funds were used to purchase alcoholic beverages marketed by Defendants which were consumed without their prior knowledge by their children under the age of 21 during the period 1982 to the present (the Class Period"), excluding Defendants and their affiliates, officers, directors, and employees;

(B) an Injunctive Class consisting of the parents and guardians of all children currently under the age of 21 who are residents of North Carolina.

39. Although the exact size of the Classes are currently unknown to Plaintiffs, the total number of class members exceeds several thousand. Accordingly, each of the Classes is sufficiently numerous such that joinder of all class members would be impracticable.

40. The claims of Plaintiffs are typical of the claims of their respective Classes. Plaintiffs have no conflicts of interest with any other members of their respective Classes and will fairly and adequately protect the interests of any absent Class members. Plaintiffs have

-18-

retained competent legal counsel with extensive experience in class action and consumer protection litigation.

41.    There exist numerous questions of law and fact common to the Classes, including: (a) whether Defendants engaged in a deceptive scheme to market alcoholic beverages to underage consumers; (b) whether the acts alleged herein as being committed by Defendants constitute violations of law; (c) whether Plaintiffs are entitled to injunctive relief; (d) whether Defendants purposefully marketed alcoholic beverages to underage consumers; (e) whether Defendants negligently or recklessly marketed alcoholic beverages to underage consumers;  (f) whether Defendants actively concealed the wrongs alleged herein; (g) whether Defendants' acts as alleged herein were trade practices; (h) whether Defendants' acts and omissions alleged herein were unfair, unconscionable, or deceptive; (i) whether Defendants represented that their goods have uses, characteristics, approvals, or benefits that they do not have; (j) whether Defendants advertised goods without the intent to sell them as advertised or offered; (k) whether Defendants' acts alleged herein were committed in the conduct of trade or commerce; (l) whether Defendants' acts as alleged herein have the capacity, tendency, or likelihood to deceive or take advantage of consumers; (m) whether there is a remedy at law to adequately compensate the Classes for Defendants' wrongful conduct; (n) whether it would shock the conscience or be manifestly unfair for Defendants to retain the revenues and profits they derive from the illegal sale of their products to underage consumers; (o) whether the injuries caused by Defendants' wrongful conduct are

-19-

outweighed by any countervailing benefits to society or competition; (p) whether Defendants used reasonable care to avoid inducing or encouraging the illegal and dangerous purchase and use of their products by underage consumers; (q) whether Defendants' conduct as alleged herein was unreasonable, immoral, unscrupulous, or unethical; (r) whether Defendants placed advertisements in media or at times where the audience consisted of a disproportionately large percentage of underage consumers; (s) whether Defendants employed advertising themes, methods, and characters that substantially or primarily appeal to underage consumers; and (t) whether Defendants took advantage of consumers' inability to reasonably protect their interests because of age. These and other questions of law and fact which are common to the Classes predominate over any questions which affect only individual Class members.

42.    Class action treatment of this case is the superior, if not the only, method for the fair and efficient adjudication of this controversy because, among other reasons, such treatment will permit a large number of similarly situated persons and entities to prosecute their claims simultaneously and efficiently without the unnecessary duplication of evidence, effort, and expense that numerous individual cases would engender. In addition, the class action mechanism is the only method by which certain Class members with small claims could, as a practical matter, seek redress for the wrongs committed by Defendants as alleged in this case. The benefits of class action treatment for this case substantially outweigh the difficulties, if any, which may arise in the management of this case as a class action. There

are no unusual difficulties which may arise in the management of this case as a class action.

43.     The prosecution of separate actions by individual members of the Classes would create a substantial risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants. Without limiting the generality of the foregoing, injunctive relief sought by Plaintiffs if adjudicated individually would establish inconsistent or varying standards regarding permissible advertising and marketing practices.

44.     With respect to the allegations contained herein, Defendants have acted on grounds which are generally applicable to the Classes. Accordingly, declaratory and injunctive relief with respect to the Classes as a whole is appropriate in this case. Without limiting the generality of the foregoing, Defendants have engaged in advertising and marketing efforts which are generally applicable to the Classes as a whole.

## FACTUAL BACKGROUND

## Defendants' Marketing Efforts Directed at Underage Consumers

45.     Defendants believe that the establishment of a brand preference among consumers for a particular alcoholic beverage product is essential for that product's success in the marketplace. Defendants also believe that it is crucial to establish a brand preference at a very early age. Indeed, Defendants understand that by the time a potential consumer reaches the legal drinking age, that consumer's brand preference for certain alcoholic beverages has already been well established. To be successful in gaining and holding their all-important market share, Defendants believe that they must reach and persuade underage

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 36 of 110

consumers to embrace their product. Defendants understand that it is simply too late to wait until a consumer is of a legal drinking age to start their marketing efforts.

46.     Establishing a brand preference among teenagers is particularly important for the types of alcoholic beverages heavily consumed by young adults, such as low and mid-priced beer and so-called "alcopops" such as Mike's Hard Lemonade, Zima, and Bacardi Silver. The reason is very simple: adults in their early to mid-twenties drink far, far more alcohol than older adults. The brand preference 20-year-olds have for alcoholic beverages will stay with them throughout this "prime drinking age," thereby earning the owner of such brands a vast and steady source of revenues and profits. This phenomenon is known to Defendants as "stickiness." And the more extensive Defendants' marketing efforts directed at teenagers are, the more "sticky" their products become in the minds and hearts of young drinkers.

47.     Defendants employ a wide variety of marketing efforts directed at underage consumers. These efforts include extensive print and broadcasting advertisements designed to appeal to underage consumers and the placement of such advertisements in media and at times designed to disproportionately reach underage consumers.

48.     Defendants' print and broadcasting advertisements feature themes designed to appeal to underage drinkers. These themes include the association of sexual prowess and physical attractiveness with the use of alcoholic beverage products; drinking alcohol makes people more grown-up and more confident; drinking alcohol makes people part of the hip

crowd; the "top objective" of young drinkers is "to get wild, blitzed and be crazy" (as one Defendant's market planning report put it); the introduction and promotion of drinking rituals as a cool way to bond with other hip young people and break the ice with the opposite sex; and generally promoting rule breaking, risky behavior, and excessive alcohol consumption as socially acceptable, even ideal, norms of behavior. Defendants are fully aware that these themes strongly appeal to underage drinkers because they and their agents have conducted extensive research into the drinking habits and marketing preferences of underage drinkers. Teenagers in the United States are bombarded with billions of advertising messages touting these themes every year, directly resulting in billions of dollars in increased illegal sales made by Defendants.

49.    Defendants use cartoons, logos, and other marketing props designed to appeal to children in their alcohol advertising in order to establish brand loyalty and to breakdown children's resistance to alcohol use. Defendants know that children as young as ten years old often express a brand preference for beer and other alcoholic beverage products as a result of Defendants' use of advertising that appeals to children. Defendants also know that brand preferences established at a young age will endure throughout the teenage years and early adulthood.

50.    Defendants' advertising often features actors and models engaged in activities that primarily appeal to underage consumers, such as the playing of video games.

51.    In order to maximize the effectiveness of their marketing directed at underage

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 38 of 110

consumers, Defendants conduct extensive research concerning underage consumers, including research regarding the buying habits, drinking habits, and social attitudes of children. For example, Defendants and their agents conduct extensive focus groups and interviews of consumers who have recently turned 21 years old. These interviews and focus groups reveal, and are designed to reveal, marketing information concerning underage consumers. Indeed, the interviewees and focus group participants are explicitly asked questions regarding their attitudes, brand preferences, and drinking habits they had prior to reaching the age of 21. Knowing that such research would expose them to heightened scrutiny were it to become public knowledge, Defendants engage in a concerted effort to conceal and disguise these research efforts. These efforts to conceal and disguise their research concerning underage consumers include using code words to describe underage market segments; the use of secretive and unconventional marketing consultants; conducting research in foreign countries; and relying on market research concerning underage consumers conducted by advertising agencies and others who cannot be directly linked to Defendants.

52. Defendants knowingly and deliberately place their print advertisements in publications which are disproportionately read by underage consumers. Indeed, many such advertisements are read by more underage consumers than consumers of legal drinking age. Incredibly, Defendants themselves have stated that magazine advertisements for alcoholic beverages are acceptable and appropriate where only 50% of the magazine's readership is old enough to legally purchase alcoholic beverages.

-24-

53.     Defendants knowingly and deliberately place their broadcast advertisements on programs and at times that reach a disproportionately high number of underage consumers. Indeed, many such advertisements are placed on programs where the majority of viewers are twelve to twenty years old, even though only 15% of the population (and only 10% of the television viewing audience) is between the ages of twelve and twenty.

54.     Defendants knowingly and deliberately design and operate their web sites to appeal to underage consumers. Defendants' web sites offer games, contests, graphics, text, merchandise, and other features that are designed with the purpose and effect of appealing to underage consumers. Defendants also purposely design and operate their so-called "age gatekeepers" so that underage consumers can easily access their web sites.

55.     Defendants conduct marketing programs on college campuses and at spring break venues in order to establish brand loyalty and increase the quantity of alcoholic beverages purchased and consumed by underage drinkers.

56.     Defendants knowingly and purposely sell and distribute apparel, toys, and other logo merchandise designed to appeal to underage consumers.

57.     Defendants knowingly and purposely use actors, models, and spokespersons who appeal to underage consumers and whom underage consumers perceive as being younger than the legal drinking age.

58.     Defendants place alcohol products in films and television programs that appeal to underage consumers including: (a) "PG" and "PG-13" films featuring animal and coming-

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 40 of 110

of-age themes; (b) films for which Defendants know that the primary target market is under the age of 21; and (c) the majority of the 15 television shows most popular with teenagers.

59.     Defendants promote, sponsor, and support alcohol-soaked spring break and summer break "party tours" to foreign countries targeted at U.S. citizens under the age of 21. These party tours feature: (a) "50 hours of free drinking;" (b) Bacardi "rum showers" where students stand "open-mouthed under a spray and swallow as much rum as they can;" (c) "party passes" where students pay $75 for a wrist band that entitles them to "all-you-can-drink" privileges at bars and night clubs; (d) huge beach parties featuring free or very cheap beer, wet t-shirt contests, and other activities that appeal to underage consumers.

60.     Defendant Bacardi wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals for underage consumers that they do not have. These unfair and deceptive marketing efforts include: (a) radio advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; (b) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage readership; (c) internet marketing with substantial appeal to underage consumers that is easily accessible by underage consumers and is in fact viewed by substantial numbers of underage consumers; (d) sponsorship of events where a disproportionately large portion of participants

-26-

and the audience are under the age of 21; (e) targeted marketing and sponsored promotions of alcoholic beverages to underage U.S. citizens while they are in Mexico or other places outside the United States to encourage or induce them to illegally consume alcoholic beverages upon their return to the United States; and (f) substantial research regarding underage consumers.

61.     Defendant Bacardi has made false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with the Distilled Spirits Council of the United States, Inc.'s Code of Good Practice for Distilled Spirits Advertising and Marketing (the "DISCUS Code"). In reality, Bacardi knowingly and repeatedly violates the terms of the DISCUS Code, including restrictions regarding (a) the portrayal of "objects, images, or cartoon figures that are popular" with underage consumers; (b) "claims or representations that individuals can obtain social, professional, educational, or athletic success or status as a result of beverage alcohol consumption;" (c) advertising and marketing materials that "show a distilled spirits product being consumed abusively or irresponsibly;" (d) advertising or marketing materials that are not "dignified, modest, or in good taste;" (e) advertising or marketing materials that "claim or depict sexual prowess as a result of beverage alcohol consumption;" (f) advertising or marketing materials that "promote the intoxicating effects of beverage alcohol consumption;" (g) advertising or marketing materials that "imply illegal activity of any kind;" (h) advertising or marketing activity "associated with anti-social or dangerous behavior;" (i) advertising or marketing materials that "degrade the

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 42 of 110

image, form, or status of women, men, or of any ethnic, minority, sexually-oriented, religious, or other group;" and (j) advertising or marketing materials that are not "intended for adults of legal purchase age."

62.     Defendant Kobrand wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals for underage consumers that they do not have.  These unfair and deceptive marketing efforts include: (a) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage readership; and (b) internet marketing with substantial appeal to underage consumers that is easily accessible by underage consumers and is in fact viewed by substantial numbers of underage consumers.

63.     Defendant Kobrand has made false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with the DISCUS Code.  In reality, Kobrand knowingly and repeatedly violates the terms of the DISCUS Code, including restrictions regarding (a) "claims or representations that individuals can obtain social, professional, educational, or athletic success or status as a result of beverage alcohol consumption;" (b) advertising or marketing materials that are not "dignified, modest, or in good taste;" (c) advertising or marketing materials that "claim or depict sexual prowess as a result of beverage alcohol consumption;" (d) advertising or marketing materials that

-28-

"promote the intoxicating effects of beverage alcohol consumption;" (e) advertising or marketing materials that "imply illegal activity of any kind;" (f) advertising or marketing activity "associated with anti-social or dangerous behavior;" (g) advertising or marketing materials that "degrade the image, form, or status of women, men, or of any ethnic, minority, sexually-oriented, religious, or other group;" and (h) advertising or marketing materials that are not "intended for adults of legal purchase age."

64.     Defendant Brown-Forman wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals for underage consumers that they do not have. These unfair and deceptive marketing efforts include: (a) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage readership; and (b) radio advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience.

65.     Defendant Brown-Forman has made false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with the DISCUS Code. In reality, Brown-Forman knowingly and repeatedly violates the terms of the DISCUS Code, including restrictions regarding (a) "claims or representations that individuals can obtain social, professional, educational, or athletic success or status as a result of beverage alcohol consumption;" (b) advertising or marketing materials that are not "dignified, modest, or in

-29-

good taste;" (c) advertising or marketing materials that "claim or depict sexual prowess as a result of beverage alcohol consumption;" (d) advertising or marketing materials that "promote the intoxicating effects of beverage alcohol consumption;" (e) advertising or marketing materials that "imply illegal activity of any kind;" and (f) advertising or marketing materials that are not "intended for adults of legal purchase age."

66.     Defendant The Beer Institute is wholly controlled and directed by Defendants and other alcoholic beverage manufacturers. No governmental or regulatory authority exercises any oversight or control over the affairs or policies of The Beer Institute. The Beer Institute functions as a an important facilitator in the alcoholic beverage manufacturers' unfair and deceptive scheme to market alcoholic beverages to children and other underage consumers. Without limiting the generality of the foregoing, The Beer Institute (a) assists Defendants in making false statements regarding Defendants marketing efforts and underage consumers; (b) helps Defendants develop and implement strategies and tactics to conceal their marketing efforts directed at underage consumers; (c) actively discourages alcoholic beverage manufacturers from criticizing or calling attention to any other alcoholic beverage manufacturers' marketing efforts directed at underage consumers; (d) makes false statements regarding the marketing efforts and trade practices of Defendants; (e) serves as a clearing house and depository for information Defendants utilize in developing, implementing, and perpetuating their illegal scheme to unfairly and deceptively market alcoholic beverages to underage consumers; (f) acts as a shield to deflect, obscure, and discourage public complaints

about the alcohol industry's marketing practices toward underage consumers; (g) represents that it has a sponsorship, approval, status, affiliation, certification, or connection that it does not have, including passing itself off as a governmental or regulatory body that is independent of the alcoholic beverage manufacturers; and (h) aids and abets the Defendant alcoholic beverage manufacturers in violating the common law and consumer protection acts of the State of North Carolina.

67.     Defendant Diageo wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals for underage consumers that they do not have.  These unfair and deceptive marketing efforts include: (a) radio advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; (b) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage readership; (c) internet marketing with substantial appeal to underage consumers that is easily accessible by underage consumers and is in fact viewed by substantial numbers of underage consumers; (d) sponsorship of events where a disproportionately large portion of participants and the audience are under the age of 21; (e) television advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; and (f) substantial research regarding underage

-31-

consumers.

68.     Defendant Diageo has made false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with the DISCUS Code. In reality, Diageo knowingly and repeatedly violates the terms of the DISCUS Code, including restrictions regarding (a) the portrayal of "objects, images, or cartoon figures that are popular" with underage consumers; (b) "claims or representations that individuals can obtain social, professional, educational, or athletic success or status as a result of beverage alcohol consumption;" (c) advertising and marketing materials that "show a distilled spirits product being consumed abusively or irresponsibly;" (d) advertising or marketing materials that are not "dignified, modest, or in good taste;" (e) advertising or marketing materials that "claim or depict sexual prowess as a result of beverage alcohol consumption;" (f) advertising or marketing materials that "promote the intoxicating effects of beverage alcohol consumption;" (g) advertising or marketing materials that "imply illegal activity of any kind;" (h) advertising or marketing activity "associated with anti-social or dangerous behavior;" (i) advertising or marketing materials that "degrade the image, form, or status of women, men, or of any ethnic, minority, sexually-oriented, religious, or other group;" and (j) advertising or marketing materials that are not "intended for adults of legal purchase age."

69.     Defendant Heineken wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits,

and approvals for underage consumers that they do not have. These unfair and deceptive marketing efforts include: (a) radio advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; (b) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage readership; (c) internet marketing with substantial appeal to underage consumers that is easily accessible by underage consumers and is in fact viewed by substantial numbers of underage consumers; (d) sponsorship of events where a disproportionately large portion of participants and the audience are under the age of 21; (e) television advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; and (f) substantial research regarding underage consumers.

70.     Defendant Heineken has made false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with the Beer Institute Code. In reality, Heineken knowingly and repeatedly violates the terms of the Beer Institute Code, including restrictions regarding (a) the use of "any symbol, language, music, gesture, or cartoon character" that appeals to underage consumers; (b) the use of models and actors that do not reasonably appear to be over 21 years of age; (c) advertising and marketing materials "placed in magazines, on television or on radio" where most of the audience is below the legal drinking age and where more than 30% of the audience is below the legal drinking age;

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 48 of 110

(d) the employment of entertainment figures or groups that appeal to underage consumers;

(e) advertising and marketing materials that "portray or imply illegal activity of any kind;"

(f) advertising or marketing materials that "depict situations where beer is being consumed excessively, in an irresponsible way, or in any way illegally;" (g) advertising or marketing materials that "portray persons in a state of intoxication or in any way suggest that intoxication is acceptable conduct;" (h) advertising or marketing materials that contain "lewd or indecent language or images;" (i) advertising or marketing materials that "portray sexual passion, promiscuity or any other amorous activity as a result of consuming beer;" (j) advertising or marketing materials that "refer to any intoxicating effect that the product may produce;" and (k) advertising or marketing activities that "directly or indirectly degrade studying."

71.     Defendant Coors wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals for underage consumers that they do not have.  These unfair and deceptive marketing efforts include: (a) radio advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; (b) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage readership; (c) internet marketing with substantial appeal to underage consumers that is easily

accessible by underage consumers and is in fact viewed by substantial numbers of underage consumers; (d) sponsorship of events where a disproportionately large portion of participants and the audience are under the age of 21; (e) television advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; and (f) substantial research regarding underage consumers. Defendant Coors routinely and intentionally advertises its alcoholic beverage products in publications read by a disproportionately large percentage of underage consumers using themes designed to appeal to underage consumers. Defendant Coors' television and radio advertisements appear on programs and at times which are viewed by a disproportionately large percentage of underage consumers. For example, underage consumers are more likely than adults to hear radio advertisements for Coors Light brand beer. These advertisements are purposely designed to appeal to underage consumers and are placed in media that have a disproportionately high level of underage viewers.

72.     Defendant Coors has made false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with the Beer Institute Code. In reality, Coors knowingly and repeatedly violates the terms of the Beer Institute Code, including restrictions regarding (a) the use of "any symbol, language, music, gesture, or cartoon character" that appeals to underage consumers; (b) the use of models and actors that do not reasonably appear to be over 21 years of age; (c) advertising and marketing materials "placed in magazines, on television or on radio" where most of the audience is below the legal

drinking age and where more than 30% of the audience is below the legal drinking age; (d) the employment of entertainment figures or groups that appeal to underage consumers; (e) advertising and marketing materials that "portray or imply illegal activity of any kind;" (f) advertising or marketing materials that "depict situations where beer is being consumed excessively, in an irresponsible way, or in any way illegally;" (g) advertising or marketing materials that "portray persons in a state of intoxication or in any way suggest that intoxication is acceptable conduct;" (h) advertising or marketing materials that contain "lewd or indecent language or images;" (i) advertising or marketing materials that "portray sexual passion, promiscuity or any other amorous activity as a result of consuming beer;" (j) advertising or marketing materials that "refer to any intoxicating effect that the product may produce;" and (k) advertising or marketing activities that "directly or indirectly degrade studying."

73.     Defendant Mark Anthony wilfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals for underage consumers that they do not have. These unfair and deceptive marketing efforts include: (a) radio advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; (b) magazine advertisements with substantial appeal to underage consumers that are placed in magazines that have a disproportionately large underage

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 51 of 110

readership; (c) internet marketing with substantial appeal to underage consumers that is easily accessible by underage consumers and is in fact viewed by substantial numbers of underage consumers; (d) sponsorship of events where a disproportionately large portion of participants and the audience are under the age of 21; (e) television advertisements with substantial appeal to underage consumers that are placed on stations and at times that have a disproportionately large underage audience; and (f) substantial research regarding underage consumers.

## The Effects of Defendants' Wrongful Conduct

74.     The purpose and effect of Defendants' marketing efforts directed at underage consumers is to: (a) increase Defendants' revenues and profits derived from the sale of alcoholic beverages purchased or consumed by underage drinkers; (b) establish brand loyalty among underage consumers so that they will be loyal customers when they reach legal drinking age; (c) increase the likelihood that young people will commence the consumption of alcoholic beverages prior to the legal drinking age; and (d) increase the quantity of alcoholic beverages consumed by the society at large, thereby ensuring a steady revenue and profit stream years and decades into the future. Defendants' marketing efforts directed at underage consumers have been astoundingly successful on all four counts.

75.     The revenues and profits derived from alcoholic beverages consumed by underage drinkers are enormous. At least 15 -20% of all alcoholic beverages sold in the United States are consumed by underage drinkers. The profits earned by Defendants from

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 52 of 110

this illegal trade greatly exceed $1 billion per year. Defendants view these profits and revenues as crucial to their overall financial success.

76. Defendants' marketing efforts directed at underage consumers have also been very successful at establishing brand preferences among children and young adults too young to legally consume alcohol. By the time a young adult reaches the age of 21, he or she typically already has a brand preference for alcoholic beverages. Indeed, a majority of young people in the 16-20 age group have a brand preference for beer and other alcoholic beverages. Even more troubling, significant percentages of children in the 12-15 age group (and even many children as young as eight years old) have a favorite brand of beer or other alcoholic beverage. The establishment of these brand preferences among underage consumers is a direct consequence of Defendants' deliberate marketing efforts targeting those consumers.

77. Defendants' marketing efforts directed at underage consumers have also been very successful at increasing the likelihood that young people will begin drinking alcoholic beverages before they reach the legal drinking age.

78. Defendants' marketing efforts directed at underage consumers have also been highly effective at increasing the quantity of alcoholic beverages consumed by underage drinkers as well as the society as a whole over time. Contrary to Defendants' loud public assertions, there is a direct correlation between the number of advertising messages viewed and the quantity of alcohol consumed, particularly among teenagers. Defendants' assertions

-38-

that the billions of dollars spent on marketing and advertising alcoholic beverages in the United States affects only brand preferences but has absolutely no effect on the quantity of alcohol consumed are patently false. Independent studies, marketing and advertising text books, and experts from numerous fields clearly reject these assertions. Indeed, some of the studies conducted by the alcoholic beverage industry itself show that advertising and marketing expenditures increase the total quantity of alcoholic beverages consumed, not just the quantity of the particular brand being advertised and marketed.

79. It is undeniable that young people are attracted to and pay attention to Defendants' alcoholic beverage advertising. It is also undeniable that Defendants' carpet bombing of alcoholic beverage advertisements on audiences filled with underage consumers increases the attractiveness of alcohol use among reasonable young people and therefore increases the likelihood that they will become alcohol users prior to adulthood. Moreover, it is clear that the extensive and persistent exposure of young people to Defendants' messages encouraging alcohol consumption contradict and interfere with the implementation of the public policy of the State of North Carolina to discourage and prohibit underage drinking.

80. The human suffering underage drinking causes is enormous and undeniable. Alcohol consumption by teenagers causes physical damage to the brain; interferes with mental, emotional, and social development; degrades academic performance; and increases the incidence of risky sexual behavior, teenage pregnancy, juvenile delinquency and violent crime. Approximately 25% of all teenagers admitted to hospital emergency rooms in the

United States have alcohol in their bloodstream. Defendants' marketing practices increase the number of underage drinkers in the United States and increase the quantity of alcohol consumed by those underage drinkers. Defendants' marketing practices increase the amount of human suffering caused by underage drinking.

81. The initiation of alcohol use occurs at a younger age than ever before. The percentage of children who began drinking in eighth grade or earlier has increased 33% in the last 25 years. Individuals who start drinking alcohol before fifteen years of age are over 400% more likely to become alcohol dependent than those who begin drinking after age 21.

82. The economic costs associated with underage drinking are also devastating. Defendants' marketing practices increase the economic costs associated with underage drinking in the United States.

83. The clear, direct, and foreseeable effects of Defendants' conduct as alleged herein include (a) an increase in the illegal sales of Defendants' products to underage consumers; (b) the establishment of brand preferences for alcoholic beverages among consumers who are too young to legally consume those alcoholic beverages; (c) an increase in the quantity of alcoholic beverages consumed by underage drinkers; (d) an overall increase in the quantity of alcoholic beverages consumed by the society as a whole; (e) an increase in the revenues and profits of Defendants; (f) an increase in injuries and illnesses among teenagers; (g) an increase in injuries among the general population; (h) billions of dollars in economic injuries sustained by class members through the illegal trade in alcoholic

-40-

beverages; and (i) billions of dollars in economic losses sustained by society as a whole.

## FRAUDULENT CONCEALMENT

84.    Until recently, Plaintiffs did not discover, and could not discover through the exercise of reasonable diligence, the existence of the claims asserted in this Complaint because Defendants actively, intentionally, and fraudulently concealed their scheme to market alcoholic beverages to underage consumers.

85.    Without limiting the generality of the foregoing, Defendants' efforts at concealing their marketing of alcoholic beverages to underage drinkers include: (a) the use of code-words to describe underage market segments; (b) highly publicized and strident false public statements regarding their marketing efforts and their effects on children and other underage consumers; (c) failing to provide government agencies with information requested regarding past and present marketing and research efforts, including marketing and research efforts conducted in foreign countries; (d) using highly publicized industry marketing guidelines to deceptively shield, disguise, and protect marketing efforts which are in fact in violation of such guidelines; and (e) falsely representing that their marketing efforts are in compliance with industry marketing codes and guidelines.

86.    The Beer Institute Advertising & Marketing Code is a sham "self-regulatory" construct heavily touted by the Beer Institute's members, including Defendants, as a strong and effective bar to underage marketing that each member is "committed to compliance with." In truth, Defendants routinely, egregiously, and with impunity violate the express

-41-

terms of their own, rather lax, advertising code because, unlike legitimate self regulatory regimes in other industries, there is absolutely no enforcement mechanism for violations of the Code. Instead, complaints are simply referred to the offending company "for its review and action"; there is no appeal or review or even so much as a letter of reprimand. There is no independent assessment of the complaint, there are no follow up procedures, and there is not even a requirement that the company respond to the complaining party or notify the Beer Institute of its decision. When Defendants do respond to complaints from the public, it is usually in a form letter simply stating that the company complies with applicable standards and that there is no evidence that advertising affects children's drinking decisions. Moreover, complaints are not made public and Defendants have agreed among themselves not to file complaints against each other or to publicize other Defendants' violations of the Code. In short, the Beer Institute guidelines as observed by Defendants are nothing more than a fig leaf to divert and diffuse criticism of Defendants' marketing practices and conceal the true nature of those marketing practices. As the General Counsel of the Beer Institute has admitted publicly, enforcing the code "is not our job". The self regulation regimes in the wine and spirits industries also lack the characteristics of genuine self regulation and serve only to protect their members instead of complainants, potential victims, or the public.

## CAUSES OF ACTION

### First Cause of Action: Unfair and Deceptive Trade Practices

87.    The allegations contained in all other paragraphs of this Complaint which are

-42-

not inconsistent with this cause of action are by this reference re-alleged and incorporated herein as if fully set forth in this Paragraph.

88. Defendants' behavior as alleged in this Complaint is unfair, deceptive, unreasonable, immoral, unconscionable, oppressive, unscrupulous, unethical, and offensive to established public policy. Without limiting the generality of the foregoing, Defendants' conduct as alleged herein is unfair, deceptive, unreasonable, immoral, unconscionable, oppressive, unscrupulous, unethical, and offensive to established public policy because the Defendants intentionally, recklessly, negligently, or wilfully (a) induced or encouraged the illegal use of a product through marketing and advertising; (b) induced or encouraged the illegal use of an unusually dangerous product through advertising and marketing; (c) targeted underage drinkers with marketing and advertising for alcoholic beverages; (d) employed advertising themes, methods, characters, and media that substantially appeal to consumers who cannot legally use the product advertised; (e) promoted or encouraged the dangerous, destructive, illegal, irresponsible, and harmful use of a product; (f) placed advertisements in media primarily or disproportionately viewed by consumers who cannot legally use the product advertised; (g) encouraged or induced children to use alcoholic beverages; (h) represented that their goods have characteristics, uses, or benefits that they do not have; (i) knowingly taken advantage of consumers' inability to reasonably protect their interests by reason of age, ignorance, or similar factors; (j) advertised or offered goods without the intent to sell them as advertised or offered; (k) marketed, advertised, and supplied goods knowing

-43-

that consumers were unable to receive a substantial benefit from those goods; (l) marketed alcoholic beverages in a manner likely to encourage the illegal purchase of those beverages by underage consumers knowing that those consumers had an inability to receive a substantial benefit from the purchase or use of those beverages; (m) knowingly taken advantage of underage consumers by using Defendants' superior resources, access to information, experience, education, power in the marketplace, and knowledge; and (n) advertised their products in youth oriented media knowing that the placement of such advertisements would increase the illegal sales of their products to underage consumers.

89.     Defendants' conduct as alleged herein constitutes unfair, deceptive, and unconscionable trade practices in violation of Chapter 75.

90.     Defendants know that the direct consequence of an advertising campaign in magazines with a disproportionately high concentration of underage readers is a significant increase in the illegal sales of their products to underage consumers. Defendants also know that the direct consequence of television and radio advertising campaigns on stations and at times that have a disproportionately high concentration of underage viewers is a significant increase in the illegal sales of their products to underage consumers.

91.     As a proximate result of Defendant's conduct as alleged herein, the Plaintiff classes have been injured in their business or property. The injuries suffered by the Plaintiff classes as a result of Defendants' conduct was not reasonably avoidable by consumers.

92.     The acts and practices alleged herein were committed by each of the

-44-

Defendants in the course of engaging in business and commerce in the State of North Carolina.

93. The acts and practices alleged herein have the capacity and tendency to, and are likely to, deceive the members of the Plaintiff classes and the public at large.

94. The acts and practices alleged herein are directed to children and other underage consumers, who are unusually unsophisticated, vulnerable, impressionable, and susceptible to well orchestrated marketing campaigns.

95. The acts and practices alleged herein cause substantial injury to consumers which is outweighed by any countervailing benefits to consumers or competition that the acts or practices may provide.

96. The prosecution of this lawsuit is strongly in the public interest. Without limiting the generality of the foregoing, the prosecution of this lawsuit is strongly in the public interest because: (a) Defendants' acts and practices as alleged herein violate specific legislative, regulatory, and judicial declarations of public interest, including declarations of public interest regarding the sale and consumption of alcoholic beverages by minors, and (b) Defendants' acts and practices as alleged herein constitute part of a pattern or general course of conduct that has a substantial likelihood of repetition.

97. Defendants' acts, practices, and omissions as alleged in this Complaint violate the North Carolina Unfair and Deceptive Trade Practices Act.

## Second Cause of Action: Unjust Enrichment

98.    The allegations contained in all other paragraphs of this Complaint which are not inconsistent with this cause of action are by this reference re-alleged and incorporated herein as if fully set forth in this paragraph.

99.    Defendants have engaged in wrongful conduct resulting in substantial financial losses incurred by the Plaintiff classes.

100.    The Defendants have been unjustly enriched at the expense of the Plaintiff classes.

101.    It would shock the conscience and be manifestly unjust for Defendants to retain the revenues and profits derived from the illegal consumption of alcoholic beverages by minors.

102.    There is no adequate remedy at law to compensate the Classes for Defendants' wrongful conduct.

## Third Cause of Action: Negligence

103.    The allegations contained in all other paragraphs of this Complaint which are not inconsistent with this cause of action are by this reference re-alleged and incorporated herein as if fully set forth in this paragraph.

104.    As manufacturers and distributors of unusually dangerous products which are a well established cause of numerous injuries, illnesses, and deaths, Defendants have heightened duties to the Classes to ensure that their products are not used illegally. These

duties include: (a) the duty to use Defendants' reasonable best efforts to avoid extensively exposing children and other underage consumers to alcohol advertisements; (b) the duty to ensure that Defendants' marketing efforts do not unreasonably induce or encourage underage consumers to purchase their products; and (c) the duty to use their reasonable best efforts to ensure that minors do not begin to drink alcoholic beverages as a result of Defendants' marketing efforts.

105. Defendants have breached each of their duties to the Classes by, among other things: (a) unreasonably saturating underage consumers with extensive advertisements for alcoholic beverages; (b) refusing to take reasonable steps to avoid inducing underage consumers to buy their products; and (c) refusing to take reasonable steps to ensure that their marketing efforts do not encourage children and other underage consumers to begin drinking alcoholic beverages at an illegal age.

106. It is reasonably foreseeable that many underage consumers would be induced to illegally consume Defendants' alcoholic beverages as a result of Defendants' marketing efforts and that the Classes would be injured thereby.

107. As a proximate result of Defendants' breaches of their duties to the Classes, the classes suffered damages in an amount to be established at trial.

## PRAYER FOR RELIEF

For the reasons stated herein, Plaintiffs respectfully pray for judgment against all Defendants and request that this Court:

1. Certify this case to proceed as a class action pursuant to Rule 23 on behalf of the following classes:

> (A) a Guardian Class consisting of all residents of North Carolina who were or are parents or guardians of children whose funds were used to purchase alcoholic beverages marketed by Defendants which were consumed without their prior knowledge by their children under the age of 21 during the period 1982 to the present (the Class Period"), excluding Defendants and their affiliates, officers, directors, and employees;

> (B) an Injunctive Class consisting of the parents and guardians of all children currently under the age of 21 who are residents of North Carolina.

2. Adjudge and decree that each of the Defendants unlawfully engaged in a deceptive scheme to market alcoholic beverages to minors in violation Chapter 75;

3. Declare that the conduct alleged herein resulted in the unjust enrichment of the Defendants and that Defendants must each disgorge to Plaintiffs and the

-48-

Classes all amounts by which they have been unjustly enriched, plus costs and interest;

4.  Enjoin Defendants from engaging in any marketing of alcoholic beverages to underage persons;

5.  Assess all Defendants jointly and severally for all actual damages sustained by the Plaintiff Classes plus treble damages, punitive damages, and attorneys fees, costs of suit, and interest; and

6.  Grant such other and further relief as the Court deems proper and appropriate under the circumstances.

The Plaintiffs demand a jury trial.

Dated: January 13ᵀᴴ, 2004

Respectfully Submitted,

James F. Wyatt, III
435 East Morehead Street
Charlotte, North Carolina 28202-2609
(704) 331-0767

OF COUNSEL:

David Boies
Timothy D. Battin
Ian Otto
Christopher H. Skinner
STRAUS & BOIES, LLP
10513 Braddock Road
Fairfax, Virginia 22032
(703) 764-8700

-49-

Michael Straus
Mark Schirmer
STRAUS & BOIES, LLP
1130 22nd Street South
Birmingham, Alabama 35205
(205) 324-3800

Jeffrey A. Bartos
GUERRIERI, EDMOND & CLAYMAN, P.C.
1625 Massachusetts Avenue, N.W., Suite 700
Washington, D.C. 20036-2243
(202) 624-7400

-50-

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Ronald P. Wilson, et al. | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br><br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | *Date Last Summons Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| MIKE'S HARD LEMONADE COMPANY<br>Suite 210, 1750 West 75th Avenue<br>Vancouver, BC, V6P 6G2<br><br><br>ATTENTION: PRESIDENT OR CEO | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Date Issued*<br>1-28-04 | *Time*<br>2:52 ☐ AM ☑ PM |
|---|---|---|
| | *Signature*<br>X | |
| | ☐ *Deputy CSC*  ☐ *Assistant CSC*  ☐ *Clerk Of Superior Court* | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*  ☐ *Assistant CSC*  ☐ *Clerk Of Superior Court* | |

AOC-CV-100
Rev. 6/95

(Over)

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
Ronald P. Wilson, et al.

*Address*

*City, State, Zip*

## CIVIL SUMMONS

**VERSUS**

G.S. 1A-1, Rules 3, 4

*Name Of Defendant(s)*
Zima Company, et al.

☐ Alias and Pluries Summons

*Date Last Summons Issued*

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| DIAGEO PLC<br>8 Henrietta Place<br>London, England W1G 0NB<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)* | *Date Issued* 1-20-04 | *Time* 2:52 ☐ AM ☒ PM |
|---|---|---|
| James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☒ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

AOC-CV-100
Rev. 6/95

(Over)

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| Ronald P. Wilson, et al. | **CIVIL SUMMONS** |
| Address | |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name Of Defendant(s) | |
| Zima Company, et al. | ☐ Alias and Pluries Summons |
| | Date Last Summons Issued |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| BROWN-FORMAN CORPORATION<br>850 Dixie Highway<br>Louisville, KY 40210<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued 1-20-04 | Time 2:52 ☐ AM ☒ PM |
| --- | --- | --- |
| James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
| --- | --- | --- |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Ronald P. Wilson, et al. | |
| Address | **CIVIL SUMMONS** |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name Of Defendant(s)<br><br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | Date Last Summons Issued |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| BROWN-FORMAN BEVERAGES WORLDWIDE<br>850 Dixie Highway<br>Louisville, KY 40210<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | Date Issued 1-20-04 | Time 2:52 ☐ AM ☒ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☒ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

Mecklenburg County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| Ronald P. Wilson, et al. | |
| **Address** | **CIVIL SUMMONS** |
| **City, State, Zip** | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name Of Defendant(s) | |
| Zima Company, et al. | ☐ Alias and Pluries Summons |
| | Date Last Summons Issued |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| KOBRAND CORPORATION<br>134 East 40th Street<br>New York, NY 10016<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued 1-20-04 | Time 2.52 ☐ AM ☒ PM |
|---|---|---|
| James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

**File No.**
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| Ronald P. Wilson, et al. | |

Address

City, State, Zip

**VERSUS**

Name Of Defendant(s)

Zima Company, et al.

**CIVIL SUMMONS**

G.S. 1A-1, Rules 3, 4

☐ Alias and Pluries Summons

Date Last Summons Issued

## To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1

HEINEKEN, N.V.
Tweede Weteringplantsoen 21
1017 ZD Amsterdam

ATTENTION: PRESIDENT OR CEO

Name And Address Of Defendant 2

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)

James F. Wyatt, III
435 East Morehead Street
Charlotte, North Carolina 28202-2609

Date Issued 2-20-04   Time 2:52 ☐ AM ☒ PM

Signature

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

---

☐ **ENDORSEMENT**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days.

Date Of Endorsement   Time ☐ AM ☐ PM

Signature

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg                County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff |
| --- |
| Ronald P. Wilson, et al. |

**Address**

**City, State, Zip**

## CIVIL SUMMONS

**VERSUS**

G.S. 1A-1, Rules 3, 4

| Name Of Defendant(s) |
| --- |
| Zima Company, et al. |

☐ Alias and Pluries Summons

**Date Last Summons Issued**

## To Each Of The Defendant(s) Named Below:

**Name And Address Of Defendant: 1**

HEINEKEN USA, INC.
360 Hamilton Avenue, Suite 1103
White Plains, NY 10601


ATTENTION: PRESIDENT OR CEO

**Name And Address Of Defendant 2**

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued 1-20-04 | Time 2:58 | ☐ AM ☒ PM |
| --- | --- | --- | --- |
| James F. Wyatt, III
435 East Morehead Street
Charlotte, North Carolina 28202-2609 | Signature | | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time | ☐ AM ☐ PM |
| --- | --- | --- | --- |
| | Signature | | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | |

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg            County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Ronald P. Wilson, et al. | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | *Date Last Summons Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1*<br>THE BEER INSTITUTE, INC.<br>122 C Street, NW, Suite 750<br>Washington, DC 20001<br><br>ATTENTION: PRESIDENT OR CEO | *Name And Address Of Defendant 2* |
|---|---|

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Date Issued* —20-04 | *Time* 7:52 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☒ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

AOC-CV-100
Rev. 6/95

(Over)

# STATE OF NORTH CAROLINA

File No.
**04 CVS 626**

__Mecklenburg_____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Ronald P. Wilson, et al. | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | *Date Last Summons Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| BARCARDI GROUP<br>65 Pitts Bay Road<br>Pembroke, HM 08<br>Bermuda<br><br><br>ATTENTION: PRESIDENT OR CEO | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Date Issued* 1-20-04 | *Time* 2:52 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*  ☐ *Assistant CSC*  ☒ *Clerk Of Superior Court* | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*  ☐ *Assistant CSC*  ☐ *Clerk Of Superior Court* | |

AOC-CV-100
Rev. 6/95

*(Over)*

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| *Name Of Plaintiff*<br>Ronald P. Wilson, et al. | |
|---|---|
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br><br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | *Date Last Summons Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1*<br><br>PADDINGTON, LTD.<br>750 East Main Street<br>Stamford, CT 06912<br><br>ATTENTION: PRESIDENT OR CEO | *Name And Address Of Defendant 2* |
|---|---|

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Date Issued* 1-20-04 | *Time* 12:52 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

**File No.**
04 CVS 626

Mecklenburg            County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Ronald P. Wilson, et al. | |
| **Address** | **CIVIL SUMMONS** |
| **City, State, Zip** | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| **Name Of Defendant(s)**<br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | **Date Last Summons Issued** |

## To Each Of The Defendant(s) Named Below:

| **Name And Address Of Defendant 1** | **Name And Address Of Defendant 2** |
|---|---|
| DIAGEO NORTH AMERICA, INC.<br>750 East Main Street<br>Stamford, CT 06912<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)**<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | **Date Issued** 1-20-04 | **Time** 2:52 ☐ AM ☒ PM |
|---|---|---|
| | **Signature** | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | **Date Of Endorsement** | **Time** ☐ AM ☐ PM |
|---|---|---|
| | **Signature** | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

AOC-CV-100
Rev. 6/95

Case 3:04-cv-00141-MR   Document 1   Filed 03/29/04   Page 77 of 110
(Over)

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff |
| --- |
| Ronald P. Wilson, et al. |

| Address |
| --- |

| City, State, Zip |
| --- |

## CIVIL SUMMONS

**VERSUS**

G.S. 1A-1, Rules 3, 4

| Name Of Defendant(s) |
| --- |
| Zima Company, et al. |

☐ Alias and Pluries Summons

Date Last Summons Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| ZIMA COMPANY<br>5151 East Raines Road<br>Memphis, TN 38118<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued 1-20-04 | Time 2:52 ☐ AM ☒ PM |
| --- | --- | --- |
| James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
| --- | --- | --- |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

AOC-CV-100
Rev 6/95

(Over)

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Ronald P. Wilson, et al. | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br><br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | *Date Last Summons Issued* |

## To Each Of The Defendant(s) Named Below:

| | |
|---|---|
| *Name And Address Of Defendant 1*<br><br>BARCARDI & COMPANY LIMITED<br>Box N-7778<br>Nassau, The Bahamas<br><br>ATTENTION: PRESIDENT OR CEO | *Name And Address Of Defendant 2* |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | | |
|---|---|---|
| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Date Issued* 1-20-04 | *Time* 2:52 ☐ AM ☒ PM |
| | *Signature* | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| | | |
|---|---|---|
| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

AOC-CV-100
Rev. 6/95

(Over)

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Ronald P. Wilson, et al. | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br><br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | *Date Last Summons Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| BACARDI LIMITED<br>65 Pitts Bay Road<br>Pembroke, HM 08<br>Bermuda<br><br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | *Date Issued* 1-20-04 | *Time* 2:52 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served.  At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

AOC-CV-100
Rev. 6/95

(Over)

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

File No.
04 CVS 626

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff |
| --- |
| Ronald P. Wilson, et al. |

Address

City, State, Zip

**VERSUS**

Name Of Defendant(s)

Zima Company, et al.

## CIVIL SUMMONS

G.S. 1A-1, Rules 3, 4

☐ Alias and Pluries Summons

Date Last Summons Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| MARK ANTHONY BRANDS, LTD.<br>Suite 210, 1750 West 75th Avenue<br>Vancouver, BC, V6P 6G2<br><br>ATTENTION: PRESIDENT OR CEO | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued 1-20-04 | Time 2:52 ☐ AM ☒ PM |
| --- | --- | --- |
| James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | Signature<br>☒ Deputy CSC ☐ Ass't CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
| --- | --- | --- |
| | Signature<br>☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Ronald P. Wilson, et al. | |
| Address | **CIVIL SUMMONS** |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name Of Defendant(s)<br>Zima Company, et al. | ☐ Alias and Pluries Summons |
| | Date Last Summons Issued |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| MARK ANTHONY INTERNATIONAL<br>Suite 210, 1750 West 75th Avenue<br>Vancouver, BC, V6P 6G2<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | Date Issued 1-20-04 | Time 2:52 ☐ AM ☒ PM |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☒ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Ronald P. Wilson, et al.

Address

City, State, Zip

**CIVIL SUMMONS**

**VERSUS**

G.S. 1A-1, Rules 3, 4

Name Of Defendant(s)

Zima Company, et al.

☐ Alias and Pluries Summons

Date Last Summons Issued

## To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1

MARK ANTHONY GROUP
Suite 210, 1750 West 75th Avenue
Vancouver, BC, V6P 6G2


ATTENTION: PRESIDENT OR CEO

Name And Address Of Defendant 2

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
James F. Wyatt, III
435 East Morehead Street
Charlotte, North Carolina 28202-2609

Date Issued 1-20-04      Time 2:52  ☐ AM ☒ PM

Signature

☐ Deputy CSC   ☐ Assistant CSC   ☒ Clerk Of Superior Court

☐ ENDORSEMENT
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days.

Date Of Endorsement        Time      ☐ AM ☐ PM

Signature

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

AOC-CV-100
Rev. 6/95

(Over)

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff |
|---|
| Ronald P. Wilson, et al. |

| Address |
|---|

| City, State, Zip |
|---|

## CIVIL SUMMONS

**VERSUS**

G.S. 1A-1, Rules 3, 4

| Name Of Defendant(s) |
|---|
| Zima Company, et al. |

☐ Alias and Pluries Summons

Date Last Summons Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| COORS BREWING COMPANY<br>311 10th Street<br>Golden, CO 80401<br><br>ATTENTION: PRESIDENT OR CEO | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | -20-04 | 2:52 ☐ AM ☒ PM |
| | Signature | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served.  At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time |
|---|---|---|
| | | ☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Ronald P. Wilson, et al.<br>**Address**<br><br>**City, State, Zip** | **CIVIL SUMMONS** |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| **Name Of Defendant(s)**<br><br>Zima Company, et al. | ☐ Alias and Pluries Summons<br>**Date Last Summons Issued** |

## To Each Of The Defendant(s) Named Below:

**Name And Address Of Defendant 1**

ADOLPH COORS COMPANY
311 10th Street
Golden, CO 80401


ATTENTION: PRESIDENT OR CEO

**Name And Address Of Defendant 2**

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)**<br>James F. Wyatt, III<br>435 East Morehead Street<br>Charlotte, North Carolina 28202-2609 | **Date Issued** 1-20-04 | **Time** 2:52 ☐ AM ☒ PM |
|---|---|---|
| | **Signature** | |
| | ☐ Deputy CSC ☐ Assistant CSC ☒ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | **Date Of Endorsement** | **Time** ☐ AM ☐ PM |
|---|---|---|
| | **Signature** | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

# STATE OF NORTH CAROLINA

File No.
04 CVS 626

Mecklenburg _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Ronald P. Wilson, et al.

Address

City, State, Zip

**CIVIL SUMMONS**

**VERSUS**

G.S. 1A-1, Rules 3, 4

Name Of Defendant(s)

Zima Company, et al.

☐ Alias and Pluries Summons

Date Last Summons Issued

## To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1

BARCARDI USA, INC.
2100 Biscayne Boulevard
Miami, FL 33137


ATTENTION: PRESIDENT OR CEO

Name And Address Of Defendant 2

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
James F. Wyatt, III
435 East Morehead Street
Charlotte, North Carolina 28202-2609

Date Issued 1-20-04    Time 12:52 ☐ AM ☒ PM

Signature

☐ Deputy CSC    ☐ Assistant CSC    ☒ Clerk Of Superior Court

---

☐ ENDORSEMENT
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days.

Date Of Endorsement    Time    ☐ AM  ☐ PM

Signature

☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

File No. 04 CVS 626

| | |
|---|---|
| *Name Of Plaintiff 1*<br>Ronald P. Wilson | 04 JAN 13 PM 2: 33 |
| *Tax ID/SSN* | ........... C., C.S.C. |
| *Name Of Plaintiff 2*<br>Andrea B. Wilson | BY _____ |
| *Tax ID/SSN* | |
| *Name Of Plaintiff 3*<br>Joseph A. Wilson | |
| *Tax ID/SSN* | |

**GENERAL**

**CIVIL ACTION COVER SHEET**

☒ INITIAL FILING ☐ SUBSEQUENT FILING

*Rule 5(b), Rules of Practice For Superior and District Courts*

## VERSUS

| | |
|---|---|
| *Name Of Defendant 1*<br>Zima Company, et al. | |
| *Tax ID/SSN* | *Summons Submitted*<br>☐ Yes ☐ No |
| *Name Of Defendant 2* | |
| *Tax ID/SSN* | *Summons Submitted*<br>☐ Yes ☐ No |
| *Name Of Defendant 3* | |
| *Tax ID/SSN* | *Summons Submitted*<br>☐ Yes ☐ No |

*Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)*

James F. Wyatt, III
435 East Morehead Street
Charlotte, North Carolina 28202-2609

*Attorney Bar No.*
NC 13766

☒ Initial Appearance in Case   ☐ Change of Address

*Name Of Firm*
Wyatt & Blake, LLP

| *Tax ID No.*<br>56-1550139 | *Telephone No.*<br>(704) 331-0767 | *FAX No.*<br>331-0773 |
|---|---|---|

*Counsel for*
☒ All Plaintiffs ☐ All Defendants ☐ Only *(List party(ies) represented)*

Jury Demanded In Pleading? ☐ No ☒ Yes

☐ Amount in controversy does not exceed $15,000.
☐ Stipulate to arbitration.

| **TYPE OF PLEADING** | **CLAIM FOR RELIEF FOR** |
|---|---|

*(check all that apply)*

☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Answer/Reply (ANSW-Response)
☒ Complaint (COMP)
☐ Confession of Judgment (CNFJ)
☐ Counterclaim vs. (CTCL)
   ☐ All Plaintiffs   ☐ Only *(List on back)*
☐ Crossclaim vs. *(List on back)* (CRSS)
☐ Extend Statute of Limitations, Rule 9 (ESOL)
☐ Extend Time For Answer (MEOT-Response)
☐ Extend Time For Complaint (EXCO)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Third Party Complaint *(List Third Party Defendants on Back)* (TPCL)
☐ Other: *(specify)*

☐ Administrative Appeal (ADMA)
☐ Appointment of Receiver (APRC)
☐ Attachment/Garnishment (ATTC)
☐ Claim and Delivery (CLMD)
☐ Collection on Account (ACCT)
☐ Condemnation (CNDM)
☐ Contract (CNTR)
☐ Discovery Scheduling Order (DSCH)
☐ Injunction (INJU)
☐ Medical Malpractice (MDML)
☐ Minor Settlement (MSTL)
☐ Money Owed (MNYO)
☐ Negligence - Motor Vehicle (MVNG)
☐ Negligence - Other (NEGO)
☐ Motor Vehicle Lien G.S. 44A (MVLN)
☐ Limited Driving Privilege - *Out-of-State Convictions* (PLD)
☐ Possession of Personal Property (POPP)
☐ Product Liability (PROD)
☐ Real Property (RLPR)
☐ Specific Performance (SPPR)
☐ Other: *(specify)*

**NOTE:** *Small claims are exempt from cover sheets.*

| *Date*<br>1/13/04 | *Signature Of Attorney/Party*<br>*[signature]* |
|---|---|

**NOTE:** *All papers filed in civil actions, special proceedings and estates shall include as the first page of the filing a cover sheet summarizing the critical elements the filing in a format prescribed by the Administrative Office of the Courts. The Clerk of Superior Court shall require a party to refile any paper which does not include the required cover sheet.*

*(Over)*

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves, all
others similarly situated,

      Plaintiffs,

      v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO., MARK
ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

      Defendants.

Civil No. _____

## CONSENT TO REMOVAL

Zima Beverage Company[1], Adolph Coors Company, and Coors Brewing Company,

named but unserved defendants in the above-captioned action, by and through their undersigned

counsel, hereby consent to the removal by Bacardi U.S.A., Inc. of the civil action entitled *Ronald*

*P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly*

*situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626 (Superior Court Division of the

---

[1] Zima Beverage Company is not a separate corporate or business entity, but instead is a
trade name used by Coors Brewing Company.



General Court of Justice, Mecklenburg County, North Carolina), from the North Carolina Superior Court to the United States District Court for the Western District of North Carolina, Charlotte Division.

By consenting to the removal, Zima Beverage Company, Adolph Coors Company, and Coors Brewing Company do not waive service and reserve all of their defenses, including lack of personal jurisdiction, venue, and improper service.

This 26th day of March, 2004.

Respectfully Submitted,

Mark W. Merritt, Esq.
Robinson Bradshaw & Hinson, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
Tel. 704.377-8337
Fax. 704.373.3937


Thomas W. Kirby, Esq.
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC 20006
Tel. 202.719.7000
Fax. 202.719.7049

*Counsel for Zima Beverage Company,*
*Adolph Coors Company and*
*Coors Brewing Company*

2

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

        Plaintiffs,

        v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

        Defendants.

Civil No. _____

## CONSENT TO REMOVAL

MIKE'S HARD LEMONADE COMPANY, MARK ANTHONY GROUP, MARK

ANTHONY INTERNATIONAL SRL, and MARK ANTHONY BRANDS LTD., named but

unserved defendants in the above-captioned action, by and through their undersigned counsel,

hereby consent to the removal by Bacardi U.S.A., Inc. of the civil action entitled *Ronald P.*

*Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly*

*situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626 (Superior Court Division of the

General Court of Justice, Mecklenburg County, North Carolina), from the North Carolina

Superior Court to the United States District Court for the Western District of North Carolina,

Charlotte Division. Mike's Hard Lemonade Company is not a separate corporate or business entity, but is instead a trade name used by one or more of the foregoing Mark Anthony firms. Mark Anthony Group is also not a corporate or business entity. Because neither is a separate corporate or business entity, consent to removal is not required. However, to the extent consent is required, consent is hereby given.

By consenting to the removal, Mark Anthony Group, Mark Anthony International SRL, Mark Anthony Brands Ltd., and Mike's Hard Lemonade Company do not waive service and reserve all of their defenses, including lack of personal jurisdiction, venue, and improper service. This 29th day of March, 2004.

Respectfully Submitted,

MARK ANTHONY GROUP
MARK ANTHONY INTERNATIONAL SRL
MARK ANTHONY BRANDS LTD.
MIKE'S HARD LEMONADE COMPANY

By: _____
T. Thomas Cottingham III (N.C. Bar No. 16439)
Wood W. Lay (N.C. Bar No. 25126)
Hunton & Williams LLP
Bank of America Plaza
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700
(704) 378-4890 ~ Fax

Peter L. Winik
Allen M. Gardner
Kirsten N. Stolte
Latham & Watkins LLP
555 11th Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
(202) 637-2201 ~ Fax

2

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

        Plaintiffs,

        v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

        Defendants.

Civil No. _____

## CONSENT TO REMOVAL

BACARDI LIMITED and BACARDI & COMPANY LIMITED, named but unserved

defendants in the above-captioned action, by and through their undersigned counsel, hereby

consent to the removal by Bacardi U.S.A., Inc. of the civil action entitled *Ronald P. Wilson,*

*Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly situated v.*

*Zima Company, et al.*, Civil Action No. 04-CVS-626 (Superior Court Division of the General

Court of Justice, Mecklenburg County, North Carolina), from the North Carolina Superior Court

to the United States District Court for the Western District of North Carolina, Charlotte Division.

By consenting to the removal, BACARDI LIMITED and BACARDI & COMPANY LIMITED do not waive service and reserve all of their defenses, including lack of personal jurisdiction, venue, and improper service.

This 29th day of March, 2004.

Respectfully Submitted,

BACARDI LIMITED and
BACARDI & COMPANY LIMITED

By: _____
T. Thomas Cottingham III (N.C. Bar No. 16439)
Wood W. Lay (N.C. Bar No. 25126)
Hunton & Williams LLP
Bank of America Plaza
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700
(704) 378-4890 ~ Fax

Marty Steinberg
Jeffrey W. Gutchess
Hunton & Williams LLP
Barclays Financial Center, Suite 2500
111 Brickell Avenue
Miami, FL 33131
(305) 810-2500
(305) 810-2460 ~ Fax

Gregory G. Little
Stephen R. Blacklocks
Hunton & Williams LLP
200 Park Avenue, 43rd Floor
New York, NY 10166-0136
(212) 309-1000
(212) 309-1100 ~ Fax

2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. _____

| | |
|---|---|
| Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly situated, <br> Plaintiffs, <br><br> v. <br><br> Zima Company, Mike's Hard Lemonade Company, Barcardi USA, Inc., Adolph Coors Company, Coors Brewing Co., Mark Anthony Group, Mark Anthony International, Mark Anthony Brands, Ltd., Barcardi Limited, Barcardi & Company Limited, Barcardi Group, Kobrand Corporation, Heineken N.V., Heineken USA, Inc., The Beer Institute, Inc., Brown-Forman Corporation, Brown-Forman Beverages Worldwide, Diageo PLC, Diageo North America, Inc., and Paddington, Ltd. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> **CONSENT TO REMOVAL** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

KOBRAND CORPORATION, a named but unserved defendant in the above-captioned action, by and through its undersigned counsel, hereby consents to the removal by Bacardi U.S.A., Inc. of the civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626 (Superior Court Division of the General Court of Justice, Mecklenburg County, North Carolina), from the North Carolina Superior Court to the United States District Court for the Western District of North Carolina, Charlotte Division.

By consenting to the removal, KOBRAND CORPORATION does not waive service and reserves all of its defenses, including lack of personal jurisdiction, venue, and improper service.

This 29th day of March, 2004.

Respectfully Submitted,

KOBRAND CORPORATION

By: _Mark Vasco_____
Mark Vasco
N.C. Bar No. 27048
Nelson Mullins Riley & Scarborough, L.L.P.
Bank of America Corporate Center, Suite 2400
100 North Tryon Street
Charlotte, NC 28202
704/417-3000
704/417-3013 (fax)

William C. Heck
Mark E. McGrath
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178
212/808-7800
212/808-7897 (fax)

2

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

      Plaintiffs,

      v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

      Defendants.

Civil No. _____

## CONSENT TO REMOVAL

HEINEKEN USA, INC., a named but unserved defendant in the above-captioned action, by

and through its undersigned counsel, hereby consents to the removal by Bacardi U.S.A., Inc. of

the civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of*

*themselves, all others similarly situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626

(Superior Court Division of the General Court of Justice, Mecklenburg County, North Carolina),

from the North Carolina Superior Court to the United States District Court for the Western

District of North Carolina, Charlotte Division.

By consenting to the removal, HEINEKEN USA, INC. does not waive service and reserves all of its defenses, including lack of personal jurisdiction, venue, and improper service.

This 29th day of March, 2004.

HELMS MULLISS & WICKER, PLLC


By: _____
Jonathan E. Buchan (N.C. Bar No. 8205)
P. O. Box 31247
Charlotte, NC  28231-1247
(704) 343-2063
(704) 343-2300 – Fax

COUNSEL FOR HEINEKEN USA, INCORPORATED

OF COUNSEL:

David W. Ichel
Bryce L. Friedman
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017-3954
(212) 455-2563
(212) 455-2502 – Fax

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

      Plaintiffs,

      v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

      Defendants.

Civil No. _____

## CONSENT TO REMOVAL

HEINEKEN, N.V., a named but unserved defendant in the above-captioned action, by and

through its undersigned counsel, hereby consents to the removal by Bacardi U.S.A., Inc. of the

civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of*

*themselves, all others similarly situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626

(Superior Court Division of the General Court of Justice, Mecklenburg County, North Carolina),

from the North Carolina Superior Court to the United States District Court for the Western

District of North Carolina, Charlotte Division.

C0649394.1

By consenting to the removal, HEINEKEN, N.V. does not waive service and reserves all of its defenses, including lack of personal jurisdiction, venue, and improper service.

This 29th day of March, 2004.

HELMS MULLISS & WICKER, PLLC

By: _____
Jonathan E. Buchan (N.C. Bar No. 8205)
P. O. Box 31247
Charlotte, NC 28231-1247
(704) 343-2063
(704) 343-2300 – Fax

COUNSEL FOR HEINEKEN, N.V. OF COUNSEL:

David W. Ichel
Bryce L. Friedman
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
(212) 455-2563
(212) 455-2502 – Fax

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves, all
others similarly situated,

      Plaintiffs,

      v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO., MARK
ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

      Defendants.

Civil No. _____

## CONSENT TO REMOVAL

The Beer Institute, Inc., named but unserved defendant in the above-captioned action, by

and through its undersigned counsel, hereby consents to the removal by Bacardi U.S.A., Inc. of

the civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of*

*themselves, all others similarly situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626

(Superior Court Division of the General Court of Justice, Mecklenburg County, North Carolina),

from the North Carolina Superior Court to the United States District Court for the Western

District of North Carolina, Charlotte Division.

By consenting to the removal, the Beer Institute, Inc. does not waive service and reserves all of its defenses, including lack of personal jurisdiction, venue, and improper service.

This 29TH day of March, 2004.

Respectfully Submitted,

THE BEER INSTITUTE, INC.

By: _____
Thomas D. Myrick (N.C. Bar No. 12645)
Curtis J. Shipley (N.C. Bar No. 19276)
Maranda K. Whitener (N.C. Bar No. 31864)
MOORE & VAN ALLEN PLLC
10 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
(704) 331-1000
(704) 331-1159 ~ Fax

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

      Plaintiffs,

      v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

      Defendants.

Civil No. _____

---

## CONSENT TO REMOVAL

Brown-Forman Corporation and its unincorporated operating unit Brown-Forman

Beverages Worldwide, named but unserved defendants in the above-captioned action, by and

through their undersigned counsel, hereby consent to the removal by Bacardi U.S.A., Inc. of the

civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of*

*themselves, all others similarly situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626

(Superior Court Division of the General Court of Justice, Mecklenburg County, North Carolina),

from the North Carolina Superior Court to the United States District Court for the Western

District of North Carolina, Charlotte Division.

2225185.01
LIB:

By consenting to the removal, Brown-Forman Corporation and its unincorporated operating unit Brown-Forman Beverages Worldwide do not waive and reserve all of their defenses, including lack of personal jurisdiction, venue, and improper service.

This 29th day of March, 2004.

Respectfully Submitted,

BROWN-FORMAN CORPORATION AND
BROWN-FORMAN BEVERAGES WORLDWIDE

Cory Hohnbaum
N.C. Bar No. 17453
214 North Tryon Street, 47th Floor
Charlotte, NC 28202
Telephone: 704-331-7432
Facsimile: 704-353-3132

OF COUNSEL:

KENNEDY COVINGTON LOBDELL & HICKMAN, L.L.P.
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone: (704) 331-7400
Facsimile: (704) 331-7598

DAVIS POLK & WARDWELL
Frank S. Moseley
1600 El Camino Real
Menlo Park, CA 94025
Telephone: 650-752-2006
Facsimile: 650-752-2111

2225185.01
LIB:

2

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

       Plaintiffs,

       v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

       Defendants.

Civil No. _____

## CONSENT TO REMOVAL

DIAGEO PLC, DIAGEO NORTH AMERICA, INC. and PADDINGTON, LTD., named but unserved defendants in the above-captioned action, by and through their undersigned counsel, hereby consent to the removal by Bacardi U.S.A., Inc. of the civil action entitled *Ronald P. Wilson, Andrea B. Wilson, and Joseph A. Wilson, on behalf of themselves, all others similarly situated v. Zima Company, et al.*, Civil Action No. 04-CVS-626 (Superior Court Division of the General Court of Justice, Mecklenburg County, North Carolina), from the North Carolina Superior Court to the United States District Court for the Western District of North Carolina, Charlotte Division.

By consenting to the removal, DIAGEO PLC, DIAGEO NORTH AMERICA, INC. and PADDINGTON, LTD. do not waive service and reserve all of their defenses, including lack of personal jurisdiction, venue, and improper service.

This 29th day of March, 2004.

Mark P. Henriques
N.C. Bar Number 18701

OF COUNSEL:

Womble Carlyle Sandridge & Rice,
*a Professional Limited Liability Company*
3300 One First Union Center
301 South College Street
Charlotte, North Carolina 28202-6025
Telephone: (704) 331-4900

Pressly M. Millen
State Bar No. 16178

Womble Carlyle Sandridge & Rice,
*a Professional Limited Liability Company*
Post Office Box 831
Raleigh, North Carolina 27602
Telephone: (919) 755-2100

Sullivan & Cromwell
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

Philip L. Graham, Jr.
William J. Snipes
Catherine J. Rosato

Attorneys for Defendants
DIAGEO PLC, DIAGEO NORTH AMERICA, INC.
and PADDINGTON, LTD.

2

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-626

RONALD P. WILSON, ANDREA B. WILSON and
JOSEPH A. WILSON, on behalf of themselves,
all others similarly situated,

      Plaintiffs,

      v.

ZIMA COMPANY, MIKE'S HARD LEMONADE
COMPANY, BACARDI USA, INC., ADOLPH
COORS COMPANY, COORS BREWING CO.,
MARK ANTHONY GROUP, MARK ANTHONY
INTERNATIONAL, MARK ANTHONY BRANDS,
LTD., BACARDI LIMITED, BACARDI &
COMPANY LIMITED, BACARDI GROUP,
KOBRAND CORPORATION, HEINEKEN N.V.,
HEINEKEN USA, INC., THE BEER INSTITUTE,
INC., BROWN-FORMAN CORPORATION, BROWN-
FORMAN BEVERAGES WORLDWIDE, DIAGEO
PLC, DIAGEO NORTH AMERICA, INC., AND
PADDINGTON, LTD.

      Defendants.

---

## NOTICE OF FILING NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant Bacardi USA, Inc.[1] did file on March 29,

2004 in the United States District Court for the Western District of North Carolina, Charlotte

Division, a Notice of Removal of the above-captioned action from the General Court of Justice,

Superior Court Division, Mecklenburg County, North Carolina. A copy of the Notice of

Removal filed in the United States District Court is attached as *Exhibit A*.

---

[1] The proper name of Bacardi USA should be "Bacardi U.S.A., Inc."



Pursuant to 28 U.S.C. § 1446(d) and N.C. Gen. Stat. § 1A-1, Rule 12(a)(2), Defendants respectfully request that this Court take no further action concerning this case.

This 29 day of March, 2004.

Respectfully submitted,

BACARDI U.S.A., INC.

By: _Wood W. Lay_

T. Thomas Cottingham III (N.C. Bar No. 16439)
Wood W. Lay (N.C. Bar No. 25126)
Hunton & Williams LLP
Bank of America Plaza
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700
(704) 378-4890 ~ Fax

Marty Steinberg
Jeffrey W. Gutchess
Hunton & Williams LLP
Barclays Financial Center, Suite 2500
111 Brickell Avenue
Miami, FL 33131
(305) 810-2500
(305) 810-2460 ~ Fax

Gregory G. Little
Stephen R. Blacklocks
Hunton & Williams LLP
200 Park Avenue, 43rd Floor
New York, NY 10166-0136
(212) 309-1000
(212) 309-1100 ~ Fax

Dan K. Webb
Jeffrey M. Wagner
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-7488
(312) 558-5700 ~ Fax

2

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on the following counsel of record as indicated below:

David Boies, III                                                                    VIA FIRST CLASS U.S. MAIL
Timothy D. Battin
Ian Otto
Christopher H. Skinner
Straus & Boies, LLP
10513 Braddock Road
Fairfax, VA 22032

Michael Strauss                                                                  VIA FIRST CLASS U.S. MAIL
Mark Schirmer
Straus & Boies, LLP
1130 22nd Street South
Birmingham, AL 35205

Jeffrey A. Bartos                                                                VIA FIRST CLASS U.S. MAIL
Guerrieri, Edmond & Claymon, P.C.
1625 Massachusetts Ave., N.W.
Suite 700
Washington, DC 20036-2243

James F. Wyatt, III                                                                  VIA HAND-DELIVERY
435 East Morehead Street
Charlotte, NC 28202-2609

Anne G. Kimball                                                                  VIA FIRST CLASS U.S. MAIL
Sarah L. Olson
Wildman Harrold Allen & Dixon, LLP
225 West Wacker Drive
Chicago, IL 60606-1229

Thomas D. Myrick                                                                VIA FIRST CLASS U.S. MAIL
Curtis J. Shipley
Moore & Van Allen PLLC
10 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003

Thomas W. Kirby
Brian Nuterangelo
Wiley Rein & Fielding, LLP
1776 K Street, N.W.
Washington, DC 20006-2304

<u>VIA FIRST CLASS U.S. MAIL</u>

Mark W. Merritt
Robinson Bradshaw & Hinson, P.A.
101 N. Tryon Street
Suite 1900
Charlotte, NC 28246

<u>VIA FIRST CLASS U.S. MAIL</u>

David W. Ichel
Bryce Friedman
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

<u>VIA FIRST CLASS U.S. MAIL</u>

Jonathan E. Buchan
Helms Mulliss & Wicker, PLLC
201 N. Tryon Street
Charlotte, NC 28202

<u>VIA FIRST CLASS U.S. MAIL</u>

Jerome G. Snider
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

<u>VIA FIRST CLASS U.S. MAIL</u>

Cory Hohnbaum
Kennedy Covington
Hearst Tower, 47th Floor
214 N. Tryon Street
Charlotte, NC 28202

<u>VIA FIRST CLASS U.S. MAIL</u>

Phillip L. Graham, Jr.
William J. Snipes
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

<u>VIA FIRST CLASS U.S. MAIL</u>

Pressly M. Millen
Womble Carlyle Sandridge & Rice PLLC
Post Office Box 831
Raleigh, NC 27602

<u>VIA FIRST CLASS U.S. MAIL</u>

William C. Heck                           VIA FIRST CLASS U.S. MAIL
Mark E. McGrath
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Mark Vasco                                VIA FIRST CLASS U.S. MAIL
Nelson Mullins Riley & Scarborough, L.L.P.
Bank of America Corporate Center
Suite 2400
100 North Tryon Street
Charlotte, NC 28202-4000

Peter L. Winik                            VIA FIRST CLASS U.S. MAIL
Latham & Watkins LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, DC 20004

This 29ᵗʰ day of March, 2004.

_Wood W. Fay_